CLARENCE I. FIKES *v.* STATE OF MISSISSIPPI.

[39 South. Rep., 783.]

INSURANCE. *Regulation. Laws* 1902, *ch.* 59, *p.* 62. *Criminal law. Evidence. Affidavit.*

Under Laws 1902, ch. 59, p. 62, regulating insurance companies, etc.:

(*a*) A foreign association executing contracts agreeing, in consideration of weekly dues, to pay its members a stipulated sum during illness and a certain other sum to a designated beneficiary to be expended in burying the member when dead, is an insurance company; and

(*b*) The issuance of a permit to such company by the insurance commissioner is a condition precedent to the exercise of any powers by an agent of such company; and

(*c*) It is competent on the prosecution of an agent of such company for violating the statute to show that it was not authorized to do business in this state, and the same may be shown by the testimony of the insurance commissioner and a certified copy of the records of his office; but

(*d*) An affidavit charging in general terms that defendant "did unlawfully assume to act as an insurance agent" is fatally defective for failure to specify the particular unlawful act sought to be charged.

FROM the circuit court of Lauderdale county.

HON. ROBERT F. COCHRAN, Judge.

Fikes, the appellant, was charged before and convicted by a justice of the peace upon an affidavit which charged that he "did unlawfully assume to act as insurance agent—to wit, as agent for the Union Mutual 'Aid Association of Mobile, Alabama— without license therefor, as provided and required by Laws 1902, ch. 59."

A demurrer was filed to the affidavit by the defendant when the case reached the circuit court on his appeal, which demurrer

raised the question whether the affidavit contained a sufficient description of the offense. The demurrer was overruled, and the case went to the jury on the evidence and a plea of not guilty. The defense was that the association for which defendant was soliciting insurance did not come within the meaning of the statute, being neither a life insurance company proper nor a fraternal order, and therefore not engaged in a business which it is the duty of the insurance commissioner to regulate, and that a license or permit from the insurance commissioner was unnecessary to enable an agent to solicit for the association, which simply agreed and undertook, in consideration of the payment by each member of weekly dues, to provide its members with a sick benefit and a burial benefit in case of death. Laws 1902, ch. 59, sec. 10, p. 65, is as follows:

"All indemnity or guarantee companies, all insurance companies, corporations, associations, and fraternal orders doing an insurance business, whether domestic or organized under the laws of other states or governments, transacting or to be admitted to transact business in this state, shall be placed under this department and shall be subject to the inspection and supervision of the commissioner."

Fikes was again convicted in the circuit court, and appealed to the supreme court.

*Miller & Baskin,* and *Amis & Dunn,* for appellant.

All of the material facts about which the defendant was entitled to be informed are entirely omitted from the affidavit, and he is left entirely to conjecture as to what offense he is charged with having committed and of the facts constituting his offense. The affidavit amounts to no more in its allegations than simple conclusions of law, and we feel that no citation of authority is necessary on the point that in order to sufficiently charge a statutory offense, under a statute like the one under consideration, it is necessary to set forth the facts and circumstances

which go to make up the offense, and it is not sufficient to charge the offense in the language of the statute alone. *Lewis* v. *State,* 49 Miss., 354; *Dee* v. *State,* 68 Miss., 601; *Sullivan* v. *State,* 67 Miss., 346; *Rawls* v. *State,* 70 Miss., 739; *Bardwell* v. *State,* 72 Miss., 535; *Roberts* v. *State,* 72 Miss., 110.

The testimony failed to show (1) that the Union Mutual Aid Association of Mobile, Alabama, was an insurance company; (2) that, if it did appear from the testimony that said association is an insurance company, there was no allegation in the affidavit to that effect, and the testimony on this point would, for that reason, be incompetent and should not have been received; and (3) that, assuming the first and second propositions to be true and to have been properly proven, the testimony failed to show that Fikes was an agent of said insurance company by any act or thing done by him in pursuance of such agency. The testimony for the state failed to show that there was any such organization, association, company, or corporation in existence in Mobile, Alabama, or anywhere else.

Assuming that there is such a thing as the Union Mutual Aid Association, that through its agents it receives weekly payments for membership dues therein, and that Fikes represented the association—stripped of all circumlocution, what have we? Simply an association, agreeing, in the case of the death of a member, to pay a burial benefit of $30.00, and in case of sickness of the member, to pay a weekly sick benefit of $5.00. Is such contract a contract of insurance, within the meaning of Laws 1902, ch. 59? Said act specifically mentions fire, life, plate-glass, marine, accident, and other classes of insurance and insurance companies, and also deals with fraternal orders, but nowhere do we find any provision relating to burial associations or sick-benefit associations. No license fees are provided for such associations; and, indeed, it seems that the legislature omitted to make any provision whatever for the superintendence or control of this class of business by the insurance department.

Under the terms of the certificate introduced in evidence, it is impossible to make more out of the Union Mutual Aid Association than an association engaged simply in the business of providing a sick benefit and a burial benefit. Looking to the provision of said act of 1902, we ask, What license fee would the insurance commissioner be authorized to accept from such an association? What certificate would he be authorized to issue to such an association for authority to engage in business in the state of Mississippi? After assuming the existence of the Union Mutual Aid Association, that it was engaged in business in Mississippi, and that Fikes was its agent, still no violation of law was shown in this case.

*J. N. Flowers,* assistant attorney-general; and *Fewell, Bozeman & Fewell,* for appellee.

It appears from the general purposes of the law creating the insurance department that the insurance commissioner was to be given jurisdiction over every form of insurance. If there is no provision in the law for the admission of a company doing a particular kind of insurance business, then such company cannot do business in this state. The purpose of the legislature could be easily defeated if an insurance company could avoid supervision by transacting its business in ways not provided for by law. It was the purpose in the creation of the department to make insurance safe for people who do not make careful investigation before paying premiums, and to allow no concern to do business in this state whose methods of business are not considered safe. It was not intended to regulate certain kinds of insurance and leave other kinds free. Especially was it intended to prohibit business by concerns which collect dues from their members, have no representative form of government, are conducted for the benefit of certain officers who may have organized the companies and are at the head of them, have no capital stock and no certainty of continued existence. Such concerns

live a short while, collecting, in the meantime, small assessments from numerous certificate holders, and then fail—go to pieces. It is against such insurance businesses the law intended to protect the people. The Union Mutual Aid Association is an aggravated example. It is a one-man concern, is conducted for the profit of the officers; has no capital stock, no representative form of government, and no certainty of continued existence.

This appellant did not have the license required of every person who acts as insurance agent. If he assumed to do the business of an agent without such license, he is guilty of crime, whatever his reason may be for not having a license. It makes no difference whether he intentionally failed to procure a license when he could have had it for the asking or whether it was impossible for him to procure a license by reason of the fact that his company had not been admitted and cannot be admitted to do business in this state.

It will be observed that the affidavit employs the words of the statute. See Laws 1902, ch. 59, sec. 74. The general rule is that indictments which follow the statute are sufficient; but this rule does not apply where there are, in the language of the statute, no sufficient words to define any offense. *Finch* v. *State,* 64 Miss., 461.

In that case the court discussed an indictment drawn upon a statute which declared it to be a crime to disturb the peace of another "by offensive conduct." It was held that an indictment using these words, "offensive conduct," was not sufficient when it did not go further and define the specific acts constituting the offensive conduct.

One test applied by the courts is: Conceding that the averments contained in the indictment are true, is it still possible that the accused may be innocent of the offense intended to be defined by the statute? If this question should be answered in the affirmative, then the indictment is not sufficient. *State* v. *Bardwell,* 72 Miss., 535.

"Where the prohibited act does not clearly appear from the language employed, or where, under certain circumstances, one may lawfully do the thing forbidden by the literal meaning of the words of the statute, it is not sufficient to indict by the use only of the statutory words. Under such circumstances, the indictment must charge, in apt language, the unlawful act, that the defendant may be advised of the nature and character of the offense with which he is charged." *Sullivan* v. *State,* 67 Miss., 350; *Rawls* v. *State,* 70 Miss., 741; *Dee* v. *State,* 68 Miss., 601.

In this state it is unlawful under any and all circumstances to assume to act as insurance agent without a license from the insurance commissioner. One cannot assume to act as insurance agent without a license and be innocent. Measured by the rule above stated, the affidavit is sufficient.

TRULY, J., delivered the opinion of the court.

The contention of the appellant that, because the insurance company which he represented does not fall clearly within any of the well-defined classes of companies specifically mentioned and dealt with by Laws 1902, ch. 59, p. 62, therefore neither he nor his company falls within the purview of that statute, is untenable. The law referred to was a timely and wise effort by the legislature to protect the people of the state against imposition and fraud on the part of any insurance company, no matter what form the particular scheme might assume. The intent of that law was that all insurance companies, whether fire, marine, accident, or fraternal, or other kind, should be subjected to an examination by the insurance commissioner before they could legally write insurance in this state. It imposes certain restrictions on every insurance company desiring to do business in this state, and demands compliance with certain conditions and the payment of certain fees before it can receive a license from the proper authority. The statute also contemplates that no agent shall represent any character of insurance company unless

the same has been lawfully permitted to do business in the state and such agent has himself received a certificate entitling him to solicit and write insurance. This beneficent legislation was found necessary in order to insure the people protection from the imposition and fraud of so-called insurance companies not organized in accordance with law, not financially responsible for losses in case such should occur, and being in truth simply traps for the unwary, operated mainly, if not solely, for the benefit of the officials and soliciting agents. The inhibition against the unlicensed transactions of insurance business was wisely couched in general terms, and that inhibition applies to all insurance companies, without regard to mere formal differences occurring in their routine of business or in the promised benefits. The intention of the legislature was not to incite or encourage the conniving to devise different kinds of insurance associations, simply varying in some particular from the generally recognized organizations, but was an attempt to absolutely prevent dishonest, fraudulent, or insolvent associations transacting business in this state. The terms of the statute expressly include "all corporations, associations, partnerships, or individuals engaged as principals in the business of insurance." Hence a permit and license is demanded of all insurance associations, without exception; and such permit can only be obtained by complete compliance with all the provisions of the statute, one of the chief conditions being that the state insurance commissioner must be fully satisfied of the applying company's "financial condition and ability to fulfill its obligations." If not satisfied of this, or if any company fails to comply with any other statutory requirement, the insurance commissioner, in the exercise of his discretion, may refuse the permit and forbid the company to prosecute its business in this state. So, if authority be granted any company, the same may be by the commissioner revoked when in his opinion "its condition is unsound" or if it "shall violate or neglect to comply with any provision of law obligatory to it."

We also hold that the issuance of a permit by the insurance commissioner is a condition precedent to the exercise on the part of any agent of any of the powers of such agency, and such permit and license is the sole proof under the law of his authority to engage in insurance business in this state. The proof in this case is perfectly clear that neither appellant nor the company for which he was acting as agent was lawfully authorized to operate in the state of Mississippi. The uncontradicted testimony of the state insurance commissioner and the certified copy of the records of his office were competent evidence, and are conclusive on that point.. It is useless to enter upon any discussion of the exact character of the so-called insurance promised by the policy of the self-styled insurance company or to decide whether it properly falls within the class of fraternal or life-insurance companies, or either. Whether fraternal or life, it was not permitted to operate in this state, and it was unlawful for appellant to solicit or write risks for it.

But we find ourselves unable to uphold the conviction in view of the defective affidavit on which this prosecution is based. The demurrer to that affidavit should have been sustained. By the statute under review there are numerous different acts which are condemned by distinct provisions and for which different and varying punishments are prescribed. The affidavit here considered affords the court no guide by which to determine positively what particular violation of the law was intended to be charged against the appellant; nor does it advise the defendant of the nature and cause of the accusation against him. The mere general averment that the defendant "did unlawfully assume to act as insurance agent" is not sufficient. Under such charge the defendant might be convicted of violating several different sections of the statute, by entirely different acts, and, upon conviction, be subject to different and distinct punishments. The affidavit should go further and show the character of insurance which the defendant is charged with writing or

soliciting, and set out in definite terms the nature and details of the unlawful act alleged to have been committed, thus advising both the court and the defendant of the exact offense intended to be charged, so that the defendant may know the statute he is alleged to have violated and, if convicted, the court may know its power in inflicting punishment. Upon this ground alone we reverse the judgment in this case. Appellant will be held in a $500 bond to answer such further prosecution as may be instituted against him.

*Reversed and remanded.*