[No. 11853.  Department Two.  October 20, 1914.]

THE STATE OF WASHINGTON, *on the Relation of H. O. Fishback, Insurance Commissioner, Respondent*, v. GLOBE CASKET & UNDERTAKING COMPANY, *Appellant*.[1]

INSURANCE—LIFE INSURANCE—NATURE OF CONTRACT—BURIAL. A contract is an insurance contract and subject to the control of the insurance laws, where it provided that a corporation, upon the acceptance and approval of applications therefor, was to enter into a contract with the applicant to issue a certificate, upon the payment of installments, which contract and certificate obligated the company, upon the death of the applicant, to furnish specified services in connection with the burial of the deceased; notwithstanding no beneficiary was named, the beneficiary being the person liable for burial expenses.

STATUTES—EXECUTIVE CONSTRUCTION—CONCLUSIVENESS. A decision by an insurance commissioner that a certain contract is not an insurance contract within the insurance laws, is not controlling or conclusive, where the insurance laws were not of doubtful con-

[1]Reported in 143 Pac. 878.

struction, the ruling had been made but two years previously, and it does not appear that it had ever been adopted or followed by other persons.

ESTOPPEL—AGAINST STATE—ACTS OF OFFICERS. While an act of an insurance commissioner in misconstruing certain laws might condone past offenses, it could not operate as an estoppel as to new offenses.

CORPORATIONS — ACTIONS AGAINST — WINDING UP — FORFEITURE OF CHARTER. Where a corporation has been engaged in but one form of business, and that an illegal insurance business, and it has contracts outstanding that require liquidation, judgment may properly be entered winding up its affairs, enjoining the prosecution of further business, and forfeiting its charter, although its charter authorized it to engage in other lawful business.

SAME—FORFEITURE OF FRANCHISE—ILLEGAL ACTS. Where the business of a corporation is not only illegal, but can result in injury to the public, the court has power to declare a forfeiture of its franchise.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered November 15, 1913, in favor of the plaintiff upon the pleadings, in an action for an injunction, tried to the court. Affirmed.

*Jno. Mills Day*, for appellant.

*The Attorney General* and *John M. Wilson, Assistant* (*L. L. Thompson*, of counsel), for respondent.

FULLERTON, J.—This is an action brought on the relation of the state insurance commissioner against the appellant to enjoin it from the further prosecution of the business conducted by it, to have its corporate affairs wound up, and its corporate charter forfeited. The complaint of the commissioner is based on the ground that the business of the appellant as conducted is in violation of the insurance laws of the state. To the complaint, the appellant made answer, whereupon the commissioner moved for judgment on the pleadings. This motion the trial court granted, rendering judgment in accordance with the prayer of the complaint.

The record discloses the following facts: The appellant is a corporation, organized under the laws of this state, having its offices and principal place of business in the city of Tacoma. Its objects and purposes, as set forth in its articles of incorporation, are the following:

"The object and purpose of this corporation shall be the manufacturing, selling and disposing of burial caskets, doing a general undertaking business, or contracting for doing the same, purchasing, selling, and disposing of all articles, materials, and everything necessary for embalming and preparing the dead for burial; owning, controlling, leasing hacks, hearses, and all other necessary vehicles for the proper transporting of the dead, and conducting funerals, in any city, town or state in the United States; to own, purchase, sell, trade for and control or lease cemeteries, burying grounds, tombs, mausoleums, lots or tracts of ground for burying the dead; to issue, sell and dispose of by barter, trade or transfer certificates guaranteeing to the holder thereof, a decent and respectable burial, interment or cremation, at the time of his death; to sell and transfer said certificates, and exchange the same for stocks, bonds, or any valuable consideration, of not less than the benefits guaranteed therein; to purchase, lease, trade for and sell lands, factory sites, and locations for the purpose of erecting and maintaining factories, offices, agencies and places of business, for the purpose of manufacturing of all and every article known to the undertaking business and disposing of the same; to employ agents, establish agencies for the purpose of disposing of any and all goods, articles and things manufactured by this company, and to dispose of and sell its certificates of funeral benefits; to do any and all things necessary to perpetuate, carry out, and fulfill the objects and purpose of this corporation; and to issue its bonds or notes in payment for any property purchased, and redeem the same at the will of the corporation."

The appellant has not, in so far as the pleadings disclose, engaged in the general undertaking business, nor has it engaged in the manufacture or sale of general burial supplies, or acquired any of the named facilities therefor. Its business is confined solely to the sale of the certificates named

in its articles, and the performance, through the agency of others, of the obligations ·assumed thereby.   These certificates are in two forms.   In the one, the corporation agrees, on the death of the holder, "to take charge of the burial of said holder, and provide the necessary furnishing and materials therefor to the value of one hundred ($100) dollars, as follows:   One black broadcloth, white or plush colored casket; one outside box for casket; one hearse; two carriages; one burial robe; necessary embalming; necessary accessories; and services of funeral director."   The other is similar in form, with the exception that it does not name the value of the furnishings, and provides that the corporation will take charge of the funeral of the holder "on the surrender of this receipt," and will furnish the hearse and two carriages in places only where they are obtainable.   Sales of the certificates are made through the agency of solicitors, on the installment plan.   An applicant is required to sign a written application according to a form provided by the corporation.   In this form is given a somewhat minute description of the applicant, his age, date and cause of his last illness, and his present condition of health, which the applicant warrants and declares to be true.   His application is subject to the approval of the corporation.   If approved, and the first installment is paid, the applicant is given a "contract . . . as binding on the company as the certificate, provided payments are made according to contract."   When the installments are fully paid, the contract is taken up and one or the other of the certificates before mentioned is issued him.   The cost of a certificate is not shown, although it is alleged that the sum collected in each case is a certain fixed sum.

It further appears that, on the organization of the corporation, the president thereof consulted with the then insurance commissioner concerning the business in which the corporation intended to engage, and was advised by him that its business would not be in violation of the state insurance

laws; and that the corporation did not then comply and has not since complied, with such laws.

The appellant, in support of its appeal, makes two principal contentions; first, that the business in which it is engaged is not an insurance business, and second, if it be so found, the state is estopped by the acts of its former insurance commissioner from now questioning the appellant's right to engage in the business.

As to the first contention, we think the business is clearly insurance. The contract evidenced by the certificate has all of the elements of a life insurance contract. It is an agreement to perform a service which can become obligatory only on the death of the certificate holder. While no beneficiary of the promise is named, in reality one exists, and may be ascertained with as much certainty as if directly and specifically named. It is the person who would otherwise be obligated to pay the expenses of the burial. This may be the heir or estate of the decedent, his relatives, or the state; but whoever such person may be, he is relieved of his obligation to the extent of the value of the service agreed to be performed by the terms of the certificate. There is, therefore, a promise by one person to perform a valuable service on the death of another, a valuable consideration paid for the promise, and a person to whom the benefit of the promise will inure. Had the ordinary nomenclature been used to designate the person making the promise, the person to whom the promise is made, the person who will receive the benefit of the promise, and the consideration paid for the promise, no one would question that it was an insurance contract. But a contract is to be determined from its nature and effect, not by the terminology used to characterize it. Here there is an "insurer," an "insured," a "premium," and a "beneficiary," and we think the contract nothing else than a plain, ordinary insurance contract.

Again, the contract is not one that the courts will strain the laws to uphold. It is freighted with the greatest possi-

bilities for fraud. Since the corporation was organized under the general incorporation laws, it could enter upon its business when its capital stock was all subscribed. It is not required to have or keep any paid up capital. Its duration is limited to fifty years. The officers of the corporation may handle and dispose of the funds received in payment of the certificates in any manner they please. It is certain that many of these certificates will not be ripe for redemption for a number of years, and it is reasonably certain that some of them will survive the life of the corporation itself. If, therefore, the company were permitted to continue the business, and all, or any considerable proportion, of these certificates were ever redeemed, it would be a consummation unique in human experience.

That contracts of the nature of the contract here in question are insurance contracts, and subject to control under the insurance statutes, is the general trend of authority. In *State ex rel. v. Wichita Mut. Burial Ass'n,* 73 Kan. 179, 84 Pac. 757, the organization in question was one ostensibly to secure to the members thereof a decent burial. The expenses were defrayed by assessments levied upon the members. Two classes of certificates were issued, one entitling members to a funeral worth one hundred dollars, and the other a funeral worth fifty dollars, accordingly, as they paid the greater or lesser assessment. It was organized by an undertaker through whom alone burials could be had. The court held the association an insurance company and subject to the insurance laws of the state. Passing upon the question, the court said:

"We conclude from the foregoing facts that the business designed to be transacted under the plan of the Wichita Mutual Burial Association is plain, ordinary insurance. Membership in this association insures to each member above ten years of age that which is equivalent to one hundred dollars cash, payable at the death of such member to whomsoever would otherwise defray the burial expenses of such decedent.

"If the certificate of membership issued by this burial association be designated a 'policy,' the assessment a 'premium,' and those who are relieved from paying the funeral expenses of the deceased member 'beneficiaries,' this association, both in general plan and phraseology, would be a substantial duplicate of the ordinary mutual insurance company.

"The fact that no beneficiary is specifically named deserves little consideration, since in reality one exists, and may be ascertained with as much certainty as if directly and specifically mentioned.  Whoever would otherwise pay the burial expenses of the deceased member is, by being relieved of that burden, as directly benefited to the amount of such expenses as if the cash were paid immediately to such person.  If the deceased member leaves an estate, the whole thereof, undiminished by the burial expenses which would otherwise be paid therefrom, will be received by his heirs.  If he leaves no estate, then his immediate relatives and friends who would otherwise have to furnish the expenses of his burial will be benefited by being relieved of that burden."

To the same effect is the case of *State v. Willett*, 171 Ind. 296, 86 N. E. 68, in which the court used the following language:

"The contract was issued by an association whose declared object was to secure, or make certain, by a system of mutual contribution, to each member of the association, at death, the specific benefit of $75 for application to his burial service.  This was indemnity, or security, that, at the cessation of the life of the member, a certain sum of money should be payable by the association for his burial, whether the deceased had paid one assessment or a thousand.  The controlling elements of the contract, as interpreted by the by-laws, are in all material respects similar to those of an ordinary mutual life insurance company. . . . It is simply a business enterprise in which the contract holder is promised a definite thing, in consideration of his performance of a definite undertaking on his part.  The contract is determinable by the cessation of a human life, and belongs to that extended class of agreements dependent upon such contingency, and commonly known as life insurance."

For cases analogous to the general principle, see: *Robbins v. Hennessey*, 86 Ohio St. 181, 99 N. E. 319; *Physicians'*

*Defense Co. v. O'Brien,* 100 Minn. 490, 111 N. W. 396; *Physicians' Defense Co. v. Cooper, State Ins. Com'r,* 199 Fed. 576; *State v. Hogan,* 8 N. D. 301, 78 Pac. 1051, 73 Am. St. 759, 45 L. R. A. 166; *Claflin v. United States Credit System Co.,* 165 Mass. 501, 43 N. E. 293, 52 Am. St. 528; *Shakman v. United States Credit System Co.,* 92 Wis. 366, 66 N. W. 528, 53 Am. St. 920, 32 L. R. A. 383.

The appellant cites the case of *Commonwealth ex rel. Hensel v. Provident Bicycle Ass'n,* 178 Pa. St. 636, 36 Atl. 197, 36 L. R. A. 589, as sustaining the contention that the business in which it is engaged is not an insurance business. In that case the defendant was a corporation organized for the "purpose of the accumulation of a fund by assessment for the protection of its members from loss by reason of injury to, or the losing of bicycles." Each member of the association was required to pay fixed dues of $2 and a further sum of $1 on the first days of January, April, July and October of each year. In consideration of the payments, the corporation agreed with its several members to, "1. Clean your bicycle twice during the year; 2. Repair tire punctured by accident; 3. Repair bicycle when damaged by accident; 4. Replace bicycle when destroyed by accident; 5. Replace bicycle when stolen, if not recovered in eight weeks, and provide a bicycle during that time." The corporation was attacked on the ground that it was carrying on an insurance business without complying with the insurance laws of the commonwealth. The trial court held that it was not, and its judgment was affirmed by the supreme court. In the course of the opinion, the court said:

"The defendant is a corporation chartered under the second section of the act of 1874 as a protective association. The question raised by the *quo warranto* and the answer is whether the association is carrying on the business of insurance in violation of the act of 1876. The right challenged is that of the defendant to carry on the business in which it is engaged. A part of this business is clearly not insurance, and a part of it may come within the meaning of that term.

This would however depend on the manner in which the affairs of the association are conducted. All of its business may be so transacted as to be of a kind that a protective association may properly carry on, and it does not appear that it has not been so transacted. The obligation of the association is to repair and replace, not to pay a fixed amount or an amount covering or proportionate to the loss sustained, and the right of the member is fixed by the fact of membership. The propriety of granting such a charter under the act of 1874 may well be doubted, as there is a probability of its improper use as a cover for a business regulated by the act of 1876, and this case is so near the border line that we have hesitated to affirm it because it might encourage attempts to establish insurance companies which would not be subject to the wholesome provisions of the insurance laws. These laws are founded on a wise public policy, and any attempt to evade them should be promptly met and defeated."

This case, in our opinion, rather supports than militates against the conclusion we have reached. It is rested, as will be observed, on the ground that all of the business of the corporation could be transacted under its charter as a protective association, and there was no showing that it had not been so transacted. The court, however, plainly intimates that if it had been shown that the corporation had conducted its business to the full extent permitted by its charter a different conclusion would have been justified. The case, therefore, we repeat, does not sustain, but rather militates against, the proposition to which it is cited.

The second contention of the appellant is also without merit. It is the general rule, undoubtedly, that, when a statute is of doubtful meaning, and the officers in charge of its execution give it a construction which is afterwards so long continued in as to amount to a general acquiescence, the courts will hesitate to declare transactions illegal which are performed in pursuance of such construction. But no such condition is presented here. The insurance acts are not of doubtful construction, and there can be no reasonable doubt, at least to our minds, that the appellant's business as con-

ducted is in violation of such statutes. Nor can it be said that the construction put upon the statute by the former commissioner has been so long continued in as to show general acquiescence. But two years have elapsed since that time, and, so far as it appears, no other person or combination of persons have adopted that construction, or engaged in the same business. Nor are the acts of the former commissioner in any sense an estoppel. An officer of the state can, under certain circumstances, condone past offenses against the law, but he cannot grant indulgences to commit new or continuing offenses. *State ex rel. Tanner v. Northwestern Inv. Co.*, 70 Wash. 381, 126 Pac. 895.

It is further objected that the judgment entered is not warranted by the facts disclosed by the record. It is argued that at most the judgment entered should go no farther than to prohibit the issuance of the illegal contracts in future, leaving the corporation free to prosecute the business it is legitimately entitled to prosecute under its articles of incorporation. But it is a sufficient answer to this to say that the company has engaged in but one form of business, and that an illegal business; that it has outstanding contracts requiring liquidation; that the court has power to provide for such liquidation in that form which in its judgment will best meet the justice and equity of the case, and that we find no abuse of discretion in the method adopted.

Finally, it is said there should be no forfeiture of the appellant's corporate charter. But as was said by Mr. Morawetz in his work on Corporations (2d ed.) §1024:

"A corporation may incur a forfeiture of its franchises by the doing of an illegal act. Any act of a corporation which is forbidden by its charter or by a general rule of law, and, strictly, every act which the charter does not expressly or impliedly authorize the corporation to perform is unlawful; and if the doing of such act is an injury to the public, it may be sufficient ground for declaring a forfeiture of the corporate franchises."

Here the business engaged in by the corporation is not only illegal, but it is of such a nature that it can result in an injury to the public. There is, therefore, no question as to the right of the court to declare a forfeiture, and we think this the better way to prevent the further continuance of the illegal business.

The judgment is affirmed.

CROW, C. J., PARKER, MOUNT, and MORRIS, JJ., concur.