## OKLAHOMA SOUTHWESTERN BURIAL ASS'N v. STATE ex rel. READ, Ins. Com'r.

No. 19082. Opinion Filed Dec. 24, 1928.

Rehearing Denied Feb. 19, 1929.

Ames, Cochran & Ames and Dolman & Dyer, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Sigler & Jackson, for defendant in error.

LESTER, J. The state of Oklahoma on relation of Jesse G. Read, Insurance Commissioner, commenced this action against the Oklahoma Southwestern Burial Association, in which it was sought to perpetually enjoin the said association from conducting an insurance business without having complied with the insurance laws of the state of Oklahoma.

Upon final hearing of the cause, judgment was rendered by the court enjoining and restraining said burial association from soliciting or procuring new business. From the judgment restraining the defendant from soliciting or entering into new contracts of insurance, the defendant has appealed.

For convenience the parties will be referred to as they appeared in the trial court.

The defendant claims and asserts that it comes within the exemption pertaining to the regulation of insurance companies by reason of the following provisions, as contained in section 6664, C. O. S. 1921:

"In this article, unless the context otherwise requires, 'company' or 'insurance company' shall include all corporations, associations, partnerships or individuals engaged as principals in the insurance business, except fraternal and benevolent orders and societies."

Defendant further contends that it is a benevolent association duly incorporated and chartered under the laws of the state of Oklahoma; that the purposes of said corporation are such as come within the contemplation of section 5584, C. O. S. 1921, which is as follows:

"The following associations for benevolent and charitable purposes may become incorporated, as provided in this article, to wit:

"First. To establish and maintain hospitals and infirmaries for the cure of the sick and support of the aged and indigent, and asylums for orphans.

"Second. For the mutual assistance of the members in time of sickness or necessity, and to provide a fund for this purpose by contributions of the members thereof from time to time, and for the like incidental benevolent purposes.

"Third. To establish and maintain lodges, chapters and encampments of fraternities or associations commonly known as Free Massons, the Independent Order of Odd Fellows, Good Templars, Sons of Temperance, and other like benevolent orders and societies.

"Fourth. To establish and maintain fire companies in any incorporated city or town."

H. S. Bettes. who was called as a witness in the trial of said cause, testified in substance as follows (C.-M. 57-77):

"I am secretary of Oklahoma Southwestern Burial Association of Ardmore. The association was organized by A. F. Bettes, H. S. Bettes and Ed Sandlin on September 15, 1926. Under the plan of our association each family became a member of the association upon the payment of a membership fee of $1 and the issuance of a certificate of membership. Upon the death of any member of the family holding a certificate, the association would furnish a burial of either $100 or $50, depending on the age of the deceased. The Oklahoma Southwestern Burial Association let a contract to the Bettes Funeral Home to bury the deceased members, but the association might provide for other undertakers to bury members. I think about 347 persons have joined the association since it was organized, but they are not all in good standing. Five assessments have been made since the organization, and we have buried about 94 members. The certificate of membership issued by the association is in the following form:

" 'This is to certify that —— is a member of the Oklahoma Southwestern Burial Association. and is entitled to all benefits herein described. The Oklahoma Southwestern Burial Association agrees to give —— or any member of his or her family, consisting of, as follows: ——, one hundred dollars ($100.-

00) burial, provided said member has paid all assessments and complied with all rules laid down on the reverse side of this certificate; the said member agrees to abide by all rules and regulations laid down by the Oklahoma Southwestern Burial Association.

" 'Given under our hand and seal this 14th day of January, 1927.

" 'A. F. Bettes, President.
" 'H. S. Bettes, Secretary.
" 'Ed Sandlin, Treasurer.

" 'Articles of Agreement.

"Article 1. For the sum of $1 paid into the treasury of the Oklahoma Southwestern Burial Association $100 burial will be given for member of family, provided they comply with the conditions of the contract.

" 'Article 2. The holder of this certificate will not be required to pay any monthly dues, but shall be required to pay 50 cents in case of death of one protected by the Oklahoma Southwestern Burial Association, unless there is money enough in the treasury to provide for the assessment.

" 'Article 3. In case of death all members must receive service from the Oklahoma Southwestern Burial Association unless otherwise designated by the association.

" 'Article 4. The Oklahoma Southwestern Burial Association will not be responsible for any member that is buried by any other undertaker unless first being notified by the president.

" 'Article 5. The Oklahoma Southwestern Burial Association will not be liable for any member of certificate holder's family who is sick at time certificate is issued.

" 'Article 6. The certificate shall be null if the 50 cents is not paid within 15 days after being notified of member's death.

" 'Article 7. For children under 12 years of age we furnish a $50 burial. Should there be sufficient money in the treasury to provide for the burial no assessment will be made.' "

As will be noted in section 6664, supra, all character of corporations, associations, partnerships and individuals engaged as principals in the insurance business are amenable to the insurance laws of the state of Oklahoma except fraternal and benevolent orders and societies, and the sole question here presented is whether the defendant association conducts a character of insurance business which comes within the operation of the statutes pertaining to the regulation of insurance.

"The name of an association will not necessarily fix or establish its real legal character. Even if it has adopted the name of a 'benevolent association,' it would make no difference. The law looks through and behind the names of things, and passes its judgment upon their substance. If the prevalent purpose and nature of an association, of whatever name, be that of insurance, the benevolent or charitable results to its beneficiaries would not change its legal character." Bolton v. Bolton, 73 Me. 299, 303.

We have been presented with a large number of citations for the purpose of supporting the proposition that the defendant association should be construed as possessing the elements and characteristics sufficient to justify its exemption from the operation of the statutes regulating insurance companies. A careful examination of these cases submitted reveals that they are controlled by the Constitution and statutes from the states whence the cases arose. The majority of the cases cited by defendant relate to questions of taxation on property of fraternal orders. There are also several cited cases which relate to corporations and societies where their purposes are largely fraternal, and also provide for insurance.

One of the strongest cases cited by the defendant is the case of State v. Taylor, decided by the Supreme Court of New Jersey in the year 1893. This case is to be found in 27 Atl. 797. A careful examination of this case shows that it was based upon the interpretation of the statutes of that state relating to the incorporation of benevolent and charitable associations. It is there said:

"The Legislature had, by numerous contemporaneous acts, recognized and provided for the distribution of the funds of these benevolent societies among their members for the two purposes above mentioned, while enacting at the same time laws of increasing stringency for the regulation of the business of insurance in all forms."

Within the last two decades there has been a number of decisions on the question as to whether a contract to furnish burials constituted insurance or a mere act of benevolence.

In the case of State v. Willett (Ind.) 86 N. E. 68, in syllabus No. 8 thereof, it is said:

"The object of an association was to furnish each of its members at death a specific sum for application to his funeral expenses, by a system of mutual contribution; the members at the death of any member paying death assessments. It employed agents to solicit business from the general public and was not founded on principles of philanthropy. Held, that its contracts with its members constituted 'life insurance,'

within Burns' Ann. St. 1908, section 4713, forbidding the taking of an application for insurance upon the life of any person in the state in favor of a person not having a bona fide insurable interest in the life of insured, or who is not related to him within a certain degree."

In the case of Renschler v. State ex rel. Hogan, Atty. Gen., (Ohio) 107 N. E. 758, it appeared from the agreed statement of facts in the record that the respondent, Renschler, at the time of the institution of suit, was engaged as an individual in the undertaking business in the city of Findlay, Hancock county, Ohio; that he entered into a certain written contract with certain other parties by which on the payment of a certain consideration he would provide such parties with respect to funerals. The court, there having before it these facts, held:

"The contract being naked insurance and nothing else, it is subject to regulation by the Insurance Department. State ex rel. v. Wichita Mut. Burial Ass'n, 73 Kan. 181, 84 Pac. 757; Fikes v. State, 87 Miss. 251, 39 South. 783; State v. Willett, 171 Ind. 296, 86 N. E. 68, 23 L. R. A. (N. S.) 197; Guenther on Insurance, section 191; May on Insurance (4th Ed.) section 27; Robbins v. Hennessey, 86 Ohio St. 181, 99 N. E. 319."

In the case of Young Man's Protestant Temperance and Ben. Soc. v. City of Fall River (Mass.) 36 N. E. 57, it was held:

"Payment of sickness and funeral benefits for members only, out of an income chiefly derived from regular compulsory dues paid by such members, is not a use for a 'benevolent' or 'charitable' purpose, within Pub. St. C. 11, section 5, cl. 3, and St. 1889, c. 465, exempting from taxation real estate of societies devoting their entire incomes to these and certain other laudable purposes."

In the case of State ex rel. Fishback, Insurance Com'r, v. Globe Casket & Undertaking Co. (Wash.) 143 Pac. 878, it appears that the appellant was engaged in the selling of certain certificates; one form of certificate providing:

"To take charge of the burial of said holder, and provide the necessary furnishing and materials therefor to the value of $100, as follows: One black broadcloth, white or colored plush casket; one outside box for casket; one hearse; two carriages; one burial robe; necessary embalming; necessary accessories; and services of funeral director."

The sales of these certificates were made through the agency of solicitors on the installment plan. An applicant is required to sign a written application according to a form provided by the corporation. After further recital of the facts in the opinion, the court then said:

"As to the first contention, we think the business is clearly insurance. The contract evidenced by the certificate has all of the elements of a life insurance contract. It is an agreement to perform a service which can become obligatory only on the death of the certificate holder. While no beneficiary of the promise is named, in reality one exists, and may be ascertained with as much certainty as if directly and specifically named. It is the person who would otherwise be obligated to pay the expenses of the burial. This may be the heir of estate of the decedent, his relatives, or the state; but, whoever such person may be, he is relieved of his obligation to the extent of the value of the service agreed to be performed by the terms of the certificate. There is therefore a promise by one person to perform a valuable service on the death of another, a valuable consideration paid for the promise, and a person to whom the benefit of the promise will inure. Had the ordinary insurance nomenclature been used to designate the person making the promise, the person to whom the promise is made, the person who will receive the benefit of the promise, and the consideration paid for the promise, no one would question that it was an insurance contract. But a contract is to be determined from its nature and effect, not by the terminology used to characterize it. Here there is an 'insurer' and 'insured,' a 'premium,' a 'beneficiary,' and we think the contract nothing else than a plain, ordinary insurance contract."

In the case of State ex rel. Attorney General v. Wichita Mutual Burial Co. et al. (Kan.) 84 Pac. 757, it there appeared under the agreed statement of facts:

"That I, W. Gill, an undertaker at Wichita, Kan., organized the said burial association upon a plan and scheme specially prepared and copyrighted. The association is not incorporated, and has not complied with the provisions of the statutes of the state relating to insurance. It has no lodge or other place provided for holding meetings or transacting its business. It has no ritual system and no meetings of any kind, except upon call of the president, when by him deemed necessary, or when required by a written request of 12 members. It purports to have a president, vice president, secretary, and treasurer, who constitute a board of control, but I. W. Gill is secretary and treasurer, and manages and controls the entire business of the association. He collects, handles, and disburses the funds, without giving security or being required to account therefor. He is the official undertaker, and has exclusive charge and management of all the burial services which the association furnishes. Officers are elected annually if nec-

essary. Any person in good health, between the ages of 1 and 20 years, can become a member. Membership continues while assessments are paid. When payments cease, all rights and what has been paid are forfeited. The right to receive burial benefits continues during the existence of the association. An assessment of 5 cents upon members under 10 years of age, and of 10 cents upon those 10 years of age or over, are made as often as necessary to defray the expenses of the association. The only expenses are those included in the burial benefits. Members who pay assessments of 10 cents are entitled to a funeral worth $100, other members $50. Each member receives a certificate of membership, executed by the principal officers of the association, which states, in substance, that the holder is a member and entitled to all the benefits of the organization, as provided by its by-laws. Each member also receives a book in which all assessments are entered and receipted for when paid. The secretary and treasurer is required to keep a book showing a list of members, deaths, collections, disbursements, and other business transactions, which is open to the inspection of members. The said I. W. Gill is the only person to whom members can apply for burial service, or upon whom they can rely to furnish future burial benefits in consideration of prior assessments paid. When this suit was commenced the membership of this association was about 8,000, and the management had been in all respects satisfactory. This association was organized November 1, 1900. No such organization had existed in the state prior to 1899. The funds collected are used exclusively for the payment of burial expenses of deceased members, and surviving relatives are not benefited thereby in any other manner. The object of this association, as stated in its plan of organization is: 'To provide for the payment, by assessment, of the funeral expenses of its members.' "

The court, after reviewing the above agreed statement of facts, said:

"We conclude, from the foregoing facts, that the business, designed to be transacted under the plan of the Wichita Mutual Burial Association, is plain, ordinary insurance. Membership in this association insures to each member, above 10 years of age, that which is equivalent to $100 cash, payable at the death of such member, to whomever would otherwise defray the burial expenses of such decedent. If the certificate of membership issued by this burial association be designated 'policy,' the assessment 'premium,' and those who are relieved from paying the funeral expenses of the deceased member 'beneficiaries,' the association, both in general plan and phraseology, will be a substantial duplicate of the ordinary mutual insurance company. The fact that no beneficiary is specifically named deserves little considera-

tion, since in reality one exists, and may be ascertained with as much certainty as if directly and specifically mentioned. Whoever would otherwise pay the burial expenses of the deceased member is, by being relieved of that burden, as directly benefited to the amount of such expenses, as if the cash was paid immediately to such person. If the deceased member leaves an estate, the whole thereof, undiminished, by the burial expenses which would otherwise be paid therefrom, will be received by his heirs. If he leaves no estate, then his immediate relatives and friends, who would otherwise have furnished the expenses of his burial, will be benefited by being relieved of that burden. This association does not belong in the category of benevolent and philanthropic societies, which furnish relief to its unfortunate and distressed members out of funds contributed for that purpose. In such associations it is not contemplated that every member will be the recipient of the relief thus provided. Financial distress, sickness, and misfortune visit many people, but they are usually of temporary duration, and, when relieved, the sufferer is in a condition to return, in kind, the generous assistance which had been extended to him. Societies of this kind are in a large measure benevolent and charitable. Contributing members anticipate the possibility of being at some time benefited from the fund contributed, but this anticipation is only a possibility, as comparatively few members receive relief therefrom. The burial association, however, discloses no charitable or benevolent features. Membership in it does not involve fraternity, social intercourse, or even ordinary casual acquaintance. The contract with each member is based wholly upon business considerations. The assessments are paid for the purpose of securing thereby a burial worth $100. The uncertainty as to when the funeral will take place gives each member good reason to suppose that it will probably be needed long before the assessments amount to the sum which it is expected to cost. We think this association is doing an insurance business, and should comply with the laws of the state."

The defendant, in discussing the Kansas case, argues that there was no exception in the Kansas statute permitting benevolent associations and fraternal orders to transact business without being amenable to insurance regulations; however, the opinion does say:

"The burial association, however, discloses no charitable features. Membership in it does not involve fraternity, social intercourse, or even ordinary casual acquaintance."

Thus the Kansas court has clearly set forth the characteristics and elements of an organization similar in its design and opera-

tion to that of the burial organization here in question.

In the instant case the object of the organization is one of profit to its promoters. It offers as an inducement to the public certain benefits based upon a fixed money consideration; if the consideration is not paid, then no benefits were conferred. Suppose the association should meet with financial misfortune and its obligations to the membership thereof fail, what then of its asserted benevolence? Suppose that from a numerous membership a large fund is collected and this fund unwisely invested and finally lost to the membership, rendering the society incapable of meeting the funeral cost of its members, can it be said that its actions thereon were benevolent?

It clearly appears that the society is wholly based upon commercial reasons, and its manner of doing business constitutes an insurance system, and that the membership thereof is entitled to protection of the insurance laws of the state of Oklahoma.

Judgment is affirmed.

BRANSON, C. J., MASON, V. C. J., and HARRISON, CLARK, and RILEY, JJ., concur.

Note.—See under (2) anno. 23 L. R. A. (N. S.) 197; 14 R. C. L. p. 841; 3 R. C. L. Supp. p. 300. See "Insurance," 32 C. J. §14, p. 985, n. 82.