STATE OF TENNESSEE *ex rel.*, ETC., COMPLAINANT, APPELLEE, *v.* MUTUAL MORTUARY ASSOCIATION, INC., DEFENDANT, APPELLANT.

(*Jackson,* April Term, 1933.)

Opinion filed June 17, 1933.

HERRON C. PEARSON, for complainant, appellee.

L. L. FONVILLE, WALDROP & HALL and JERE I. GALBRAITH, for defendant, appellant.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The State of Tennessee, on the relation of the District Attorney-General, filed the bill herein for the purpose of canceling the charter of defendant and enjoining it from doing business in this State.

The theory of the bill is that defendant is engaged in life insurance business, and has failed and refused to comply with the laws of the State regulating such associations. The defendant, by its demurrer, contends that it is not so engaged, and is not, therefore, amenable to said regulatory statutes. The Chancellor overruled the demurrer, and in his discretion permitted the defendant to appeal.

The defendant was incorporated in 1930 under the authority of section 2513 of Shannon's Annotated Code, which is as follows:

"Charters may be granted to any association of individuals organized for the general welfare of society, and not for individual profit, as follows: . . .

"(3) Life insurance orders and orders for the protection of property against any cause or causes of loss or damage, in all cases where such orders are based upon the principal of the mutual assessment of their members, and when the general good and not individual profit is the object of their organization."

Defendant concedes that it was created by virtue of the statute just quoted.

The bill charges that defendant is inseparably linked with the Smith Funeral Home, Incorporated, located at Jackson, which was also incorporated in 1930, for the purpose of engaging in the undertaking business, both corporations having been promoted by the same individuals.

It is further averred that defendant is carrying on its

activities in Madison, Gibson, Crockett, Haywood, and other counties in West Tennessee; that it has paid representatives and agents who solicit persons in said counties to become members of said association upon the payment of a fee and a promise to pay future assessments when levied, in consideration for which a certificate of membership is issued to each member entitling him to a decent burial. We quote from the certificate as follows:

"3. Each member, according to the class of certificate which he holds, shall receive a burial to be furnished by Smith Funeral Home, Incorporated, including service and casket as follows:

"CLASS A MEMBERS .......... $300.00 BURIAL

"CLASS B MEMBERS ......... 200.00 BURIAL

"CLASS C MEMBERS .......... 150.00 BURIAL

"CLASS D MEMBERS—above 12 years of age .................. 100.00 BURIAL

"CLASS D MEMBERS—under 12 years of age ................. 60.00 BURIAL"

Assessments are made as often as necessary to enable defendant to bury its members according to contract. A member failing to pay any assessment when due forfeits his membership. The defendant has no lodge system with ritualistic form of work and representative form of government. Such an association is classified as an industrial insurance company. 31 C. J., 966. The agreement which the defendant enters into with its members has all of the elements of an insurance contract, the only difference being that in this cause the defendant guarantees to its members a decent burial to cost a specified sum instead of paying to the estate of the member a certain amount of money at death.

According to Webster's New International Dictionary,

the primary definition of the word "insure" is: "To make sure or secure; to guarantee; as, to insure safety to any one."

Under the terms of the certificate the defendant guarantees to members in Class A a $300 funeral. A member is entitled to such burial if he has only paid one assessment. Such member may be possessed of no estate, but if he pays his assessments he is insured a decent burial. This insurance is issued upon the life of the member and is payable at his death.

The authorities generally hold that associations of this character are engaged in the business of life insurance. 14 R. C. L., 841; *State* v. *Willett,* 171 Ind., 286, 86 N. E., 68, 23 L. R. A. (N. S.), 197; *Renschler* v. *State,* 90 Ohio St., 363, 187 N. E., 757, L. R. A., 1915D, 501 Ann. Cas., 1916C, 1014; *State* v. *Wichita Mut. Burial Co.,* 73 Kan., 179, 84 Pac., 757; *State* v. *Beardsley,* 88 Minn., 20, 92 N. W., 472; *Oklahoma S. W. Burial Asso.* v. *State,* 135 Okla., 151, 274 Pac., 642, 63 A. L. R., 704; *Pennsylvania R. Co.* v. *Roydhouse,* 267 Pa., 368, 110 Atl., 277; *Fikes* v. *State,* 87 Miss., 251, 39 So., 783; *Smith* v. *Bullard,* 61 N. H., 381; *Sisson ex rel. Nardolillo* v. *Prata Undertaking Co.* (R. I.), 141 Atl., 76; *State ex rel. Fishback* v. *Globe Casket & Undertaking Co.,* 82 Wash., 124, 143 Pac., 878, L. R. A. 1915B, 976. In this last named case it was said:

"As to the first contention, we think the business is clearly insurance. The contract evidenced by the certificate has all of the elements of a life insurance contract. It is an agreement to perform a service which can become obligatory only on the death of the certificate holder. While no beneficiary of the promise is named, in reality one exists, and may be ascertained with as

much certainty as if directly and specifically named. It is the person who would otherwise be obligated to pay the expenses of the burial. This may be the heir of estate of the decedent, his relatives, or the state; but, whoever such person may be, he is relieved of his obligation to the extent of the value of the service agreed to be performed by the terms of the certificate. There is therefore a promise by one person to perform a valuable service on the death of another, a valuable consideration paid for the promise, and a person to whom the benefit of the promise will inure. Had the ordinary insurance nomenclature been used to designate the person to whom the promise is made, the person who will receive the benefit of the promise, and the consideration paid for the promise, no one would question that it was an insurance contract. But a contract is to be determined from its nature and effect, not by the terminology used to characterize it. Here there are an 'insurer' and 'insured,' a 'premium,' and a 'beneficiary,' and we think the contract nothing else than a plain, ordinary insurance contract.''

Our statutes, which provide for the regulation and oversight of insurance companies and their agents, were designed to protect policyholders against fraud, imposition, insolvency, and misappropriation of funds. Industrial policies especially are frequently issued to persons who are poor, illiterate, improvident, and unable to protect themselves. The same reasons that make it necessary to supervise a company selling a sick benefit policy, or one paying a small sum at death, for a premium of ten cents a week, make it necessary to protect those who pay small periodic assessments for a policy or a

certificate guaranteeing a decent and respectable funeral at death. In principle there is no difference.

The question under consideration was invoked in *State v. Gooch,* 165 Tenn., 97, 52 S. W. (2d), 143, but the court held that defendant association was not subject to regulation by the insurance department, for the reason that the death benefit was limited to $100, thus bringing the association within the saving provision of section 6421 of the Code of 1932.

We hold, therefore, that the defendant is engaged in the insurance business, and is subject to regulation by the insurance department of the State.

The decree of the Chancellor will be affirmed, and the cause remanded for further proceedings. The cost of the appeal will be paid by the defendant.

In the circumstances of this cause the Chancellor should allow the defendant a reasonable time to comply with the statute, and procure from the department a certificate authorizing it to carry on the business in which it is engaged. In the event it does comply, the bill should be dismissed at its cost.