W. H. LUQUIRE BURIAL ASSOCIATION COMPANY, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LUQUIRE FUNERAL HOMES AND INSURANCE COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 79097, 79098.    Promulgated October 7, 1937.

*William S. Pritchard, Esq.*, for the petitioner.
*Hartford Allen, Esq.*, and *L. W. Creason, Esq.*, for the respondent.

MORRIS:[1] Did the issuance of burial insurance contracts constitute the petitioner a "life insurance company" under the provisions of section 201 of the Revenue Acts of 1928 and 1932? The term "life insurance company" as defined in subdivision (a) of that section "means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance) the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds." We do not understand the petitioner to urge, nor could it seriously, that its business is the issuance of annuity or combined health and accident insurance. Nor, if we find that the petitioner is a life insurance company, do we understand that there is any serious doubt that its reserve funds held for the fulfillment of its contracts "comprise more than 50 per centum of its total reserve funds", since its reserves, other than those so held, are negligible.

While there are many accepted definitions of what constitutes life insurance, in the generally accepted sense, Cooley says that the following, in *Commonwealth* v. *Wetherbee*, 105 Mass. 149, has been approved by the courts and writers as the clearest:

* * * A contract of insurance is an agreement by which one party for a consideration, which is usually paid in money, either in one sum or at different times during the continuance of the risk, promises to make a certain payment of money, on the destruction or injury of something in which the other party has an interest. In fire and marine insurance, the thing insured is property; in life or accident insurance, it is the life or the health of a person. All that is requisite to constitute such a contract is the payment of the consideration by the one and the promise of the other to pay the amount of the insurance upon the happening of injury to the subject by the contingency contemplated in the contract.

Briefs on the Law of Insurance—Cooley, vol. I, p. 15. Section 8341 of the Code of Alabama, 1923, defines a "contract of insurance" to be "an agreement, expressed or implied, by which one party, for a consideration, promises to pay money, or its equivalent, or to do some act of value to the assured, upon the destruction or injury of something in which the other party has an insurable interest."

Were the contracts issued by the petitioner "life insurance" contracts? Cooley's answer (vol. VI, p. 6) to this query is that "A corporation executing contracts to furnish members a funeral and all necessary requisites is engaged in writing life insurance." Citing *State ex rel. Fishback, Insurance Commissioner* v. *Globe Casket & Undertaking Co.*, 82 Wash. 124; 143 Pac. 878; and *Renschler* v. *State ex rel. Hogan*, 90 Ohio St. 363; 107 N. E. 758. Couch, in a

[1] This report was prepared during Mr. Morris' term of office.

similar work, says that "burial or funeral benefit insurance is valid, and being determinable upon the cessation of human life, and dependent upon that contingency, constitutes life insurance." I Couch on Insurance, sec. 32, pp. 46, 47, footnote 3.

In *State ex rel. Fishback, Insurance Commissioner* v. *Globe Casket & Undertaking Co., supra*—a case arising in the Supreme Court of the State of Washington—an action was brought, on the relation of the state insurance commissioner, to enjoin the operation of appellant's business, on the ground that it was in violation of the insurance laws of the state. In a very substantial sense its objects and purposes were the same as in the case of the petitioner, to wit, to engage in the undertaking business and to issue burial certificates guaranteeing the insured "a decent and respectable burial." Holding the contract entered into there to be an "insurance contract", the court said:

* * * The contract evidenced by the certificate has all of the elements of a life insurance contract. It is an agreement to perform a service which can become obligatory only on the death of the certificate holder. While no beneficiary of the promise is named, in reality one exists, and may be ascertained with as much certainty as if directly and specifically named. It is the person who would otherwise be obligated to pay the expenses of the burial. This may be the heir of estate of the decedent, his relatives, or the state; but, whoever such person may be, he is relieved of his obligation to the extent of the value of the service agreed to be performed by the terms of the certificate. There is therefore a promise by one person to perform a valuable service on the death of another, a valuable consideration paid for the promise, and a person to whom the benefit of the promise will inure. Had the ordinary insurance nomenclature been used to designate the person making the promise, the person to whom the promise is made, the person who will receive the benefit of the promise, and the consideration paid for the promise, no one would question that it was an insurance contract. But a contract is to be determined from its nature and effect, not by the terminology used to characterize it. Here there is an "insurer," and "insured," a "premium," and a "beneficiary," and we think the contract nothing else than a plain, ordinary insurance contract.

\* \* \* \* \* \* \*

That contracts of the nature of the contract here in question are insurance contracts, and subject to control under the insurance statutes, is the general trend of authority. * * *

In another case, arising under the laws of the State of Kansas, *State ex rel. Attorney General* v. *Wichita Mutual Burial Association*, 84 Pac. 757, cited with approval in *State* v. *Globe Casket & Undertaking Co., supra*, the supreme court of that state held an association, organized for the purpose of securing to its members a burial worth $100 in consideration of certain assessments to be paid by its members, during lifetime, to be an insurance association, saying:

We conclude, from the foregoing facts, that the business, designed to be transacted under the plan of the Wichita Mutual Burial Association, is plain,

ordinary insurance. Membership in this association insures to each member, above 10 years of age, that which is equivalent to $100 cash, payable at the death of such member, to whoever would otherwise defray the burial expenses of such decedent. If the certificate of membership issued by this burial association be designated "policy," the assessment "premium," and those who are relieved from paying the funeral expenses of the deceased member "beneficiaries," this association, both in general plan and phraseology, will be a substantial duplicate of the ordinary mutual insurance company. The fact that no beneficiary is specifically named deserves little consideration, since in reality one exists, and may be ascertained with as much certainty as if directly and specifically mentioned. Whoever would otherwise pay the burial expenses of the deceased member is, by being relieved of that burden, as directly benefited to the amount of such expenses, as if the cash was paid immediately to such person. If the deceased member leaves an estate, the whole thereof, undiminished by the burial expenses which would otherwise be paid therefrom, will be received by his heirs. If he leaves no estate, then his immediate relatives and friends, who would otherwise have furnished the expenses of his burial, will be benefited by being relieved of that burden.

True the court in that case merely said, except by clear inference, that the business engaged in was "ordinary" insurance and did not specifically say that it was "life" insurance, but since the contracts, as in all of such cases, are predicated upon the death of the insured, we conceive of no other classification into which it might logically fall.

In still another case—cited with approval in *State ex rel. Fishback, Insurance Commissioner* v. *Globe Casket & Undertaking Co.*, *supra*, arising under the laws of the State of Indiana—*State* v. *Willett*, 86 N. E. 68—the state supreme court, considering a similar question, said:

\* \* \* The contract was issued by an association whose declared object is to secure, or make certain, by a system of mutual contribution, to each member of the association, at death, the specific benefit of $75 for application to his burial service. This was indemnity, or security, that at the cessation of the life of the member a certain sum of money should be payable by the association for his burial, whether the deceased had paid one assessment or a thousand. The controlling elements of the contract, as interpreted by the by-laws, are in all material respects similar to those of an ordinary mutual life insurance company. \* \* \* It is simply a business enterprise in which the contract holder is promised a definite thing, in consideration of his performance of a definite undertaking on his part. The contract is determinable by the cessation of a human life, and belongs to that extended class of agreements dependent upon such contingency, and commonly known as "life insurance."

In fact the authorities generally hold, wherever such funeral or burial contracts are entered into, that they constitute life insurance and that such corporations or associations are engaged in the life insurance business. *State ex rel. District Attorney General* v. *Mutual Mortuary Association, Inc.* (Tenn.), 61 S. W. (2d) 664; *State ex rel. Landis, Attorney General* v. *De Witt C. Jones Co.* (Fla.), 147

So. 230; *Sisson, Attorney General ex rel. Nardolillo* v. *Prata Undertaking Co.* (R. I.), 141 Atl. 76; *State* v. *Willett* (Ind.), *supra;* *Renschler* v. *State ex rel. Hogan* (Ohio), *supra; State* v. *Wichita Mutual Burial Association* (Kans.), *supra; State* v. *Beardsley* (Minn.), 92 N. W. 472; *Oklahoma Southwestern Burial Association of Ardmore* v. *State ex rel. Read, Insurance Commissioner* (Okla.), 274 Pac. 642; *Pennsylvania Railroad Co.* v. *Roydhouse* (Pa.), 110 Atl. 277; *Fikes* v. *State* (Miss.), 39 So. 783; *Smith* v. *Bullard*, 61 N. H. 381; *State ex rel. Fishback, Insurance Commissioner* v. *Globe Casket & Undertaking Co.* (Wash.), *supra.*

While not called upon to rule specifically upon the exact question, the Court of Appeals of Alabama, on March 16, 1937, in *Booker T. Washington Burial Insurance Co.* v. *Williams*, 173 So. 269— wherein a burial insurance policy was brought into question—very clearly indicated by its reasoning, and references to the term "life insurance" in applying the law to the circumstances of that case, that it considered such contracts and such businesses as life insurance under the laws of the State of Alabama, and the firms engaged in the issuance thereof as in the life insurance business. See also *Jordan's Mutual Aid Association* v. *Asberry* (Ala.), 154 So. 120.

We had the benefit of the undisputed testimony of the man who was the insurance commissioner of the State of Alabama during the period under consideration, who testified that his office regarded and treated burial insurance organizations as "industrial life insurance" businesses, operating under what was known as "mutual aid laws" of the state.

The respondent makes a point of the fact—citing, among others, a certain definition from I Couch on Insurance, 1929 ed., p. 49, par. 34, to the effect that only the payment of a "sum of money" upon death will suffice—that payment under the contracts here were to be made in merchandise and services. Cooley, in his Briefs on the Law of Insurance, vol. I, p. 5, recognizes the inaccuracy or incompleteness of the definitions of insurance wherein, after setting forth one, he says, "Perhaps a better definition is that a contract of insurance is an agreement by which one party for a consideration promises to pay money or its equivalent or to do some act of value to the assured upon the destruction or injury of something in which the other party has an interest", clearly recognizing that the "equivalent" of money would suffice. In this connection it should be noted, *supra*, that Alabama has adopted this as its statutory definition of what constitutes a "contract of insurance", recognizing the payment of money "or its equivalent."

In conclusion, finding as we do that the petitioner was organized to engage in the burial insurance business; that it so engaged; that it not only was recognized as an insurance company by the Insurance

Commissioner of the State of Alabama, but was supervised by and required to file annual reports with him in the same manner as ordinary life insurance companies: that it not only established reserves for the fulfillment of its contractual obligations but those reserves were actually determined by actuaries of the insurance commissioner; and that a contract was entered into between the petitioner, insurer, and the insured, whereby for the payment of a stipulated sum, over a period of time, the petitioner would pay, in merchandise and services, a sum measured by the retail value of a complete funeral, upon proof of death of the insured (cf. *West Virginia & Kentucky Insurance Agency*, 18 B. T. A. 715), we are convinced that the petitioner issued "life insurance" contracts and that it meets the test of the statute defining life insurance companies. Having so decided, the alternative question presented need not be considered.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*