WEST VIRGINIA & KENTUCKY INSURANCE AGENCY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24170, 25494, 36638, 40455. Promulgated January 9, 1930.

*Benjamin H. Saunders, Esq.*, for the petitioner.
*B. M. Coon, Esq.*, and *C. R. Marshall, Esq.*, for the respondent.

716

718

## OPINION.

SMITH: Although in the petitions filed in these proceedings numerous errors are alleged on the part of the respondent in the determination of deficiencies, most of these were abandoned at the hearing or else no evidence was offered in support of them. In its brief the petitioner states that one issue is raised by these proceedings, namely, whether the petitioner corporation is entitled to classification as a life insurance company, as defined by section 242 of the Revenue Acts of 1921, 1924, and 1926, for the calendar years 1921 to 1926, inclusive. If this point be decided against the petitioner it presses its claim that, inasmuch as it kept its books of account and made its returns upon the accrual basis, it is entitled to have regarded as accruals of each calendar year the claims arising in that year which were paid in subsequent years. It likewise admits that upon such basis there should be excluded from the deductions allowed by the Commissioner in the determination of deficiencies the amounts paid in each year in respect of claims arising from injuries or sickness properly belonging to a prior year.

As above indicated, the principal contention of the petitioner is that it is entitled to classification as a life insurance company for the years 1921 to 1926, inclusive, under section 242 of the Revenue Acts of 1921, 1924, and 1926. This section provides:

That when used in this title the term "life insurance company" means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds.

The genesis of this legislation is explained in part by the reports of the Ways and Means Committee and of the Finance Committee in offering the bill, which later became the Revenue Act of 1921, to the respective Houses of Congress. The Finance Committee Report on page 20 states:

Sections 242–246 provide a new plan for the taxation of life insurance companies, substantially similar to the plan embodied in the revenue act of 1918 as first adopted by the Senate. The provisions of the present law applicable to life insurance companies are imperfect and productive of constant litigation. The proposed plan would tax life insurance companies on the basis of their investment income from interest, dividends, and rents, with suitable deductions for expenses fairly chargeable against such investment income. * * *

See also *National Life Insurance Co.* v. *United States*, 277 U. S. 508, especially the dissenting opinion of Mr. Justice Brandeis. Unquestionably the litigation that was referred to in the Finance Report is *Mutual Benefit Life Insurance Co.* v. *Herold*, 198 Fed. 199; 201 Fed. 918; *Penn Mutual Life Insurance Co.* v. *Lederer*, 252 U. S. 523; *New York Life Insurance Co.* v. *Edwards*, 271 U. S. 109; the last two of such cases being cited by Mr. Justice Brandeis in his dissenting opinion in *National Life Insurance Co.* v. *United States*, *supra*.

It is apparent to us that Congress meant to classify as life insurance companies under section 242 those companies which are well recognized as life insurance companies in popular speech and by the laws of several States as distinguished from all other companies. In *Ritter* v. *Mutual Insurance Co. of New York*, 169 U. S. 139, it was stated:

Life insurance imports a mutual agreement, whereby the insurer, in consideration of the payment by the assured of a named sum annually or at certain times, stipulates to pay a larger sum at the death of the assured. * * *

Under the laws of practically all of the States, including those of West Virginia, life insurance companies are dealt with differently from all other companies. Laws specifically provide the manner in which the reserve of a life insurance company shall be computed. It is well recognized that this reserve must be built up over a period of years to meet the payment called for by the policy at the expected date of death of the insured. The petitioner admits that it was not a life insurance company or even an insurance company within the contemplation of the statutes of the State of West Virginia.

The policies issued by the petitioner as agent of the Inter-Ocean Casualty Co. were not ordinary life policies. It is true that they generally provided that if death resulted within a period of 90 days from an accident, the company would pay a death benefit and where death was not the result of an accident the company would pay a small funeral benefit.

In *Jones* v. *Prudential Insurance Co. of America*, 236 S. W. 429, it is stated:

* * * In an ordinary life policy the insurer contracts to pay a certain sum of money when satisfactory proof is made that the insured has died. Death is the contingency which must happen that will create liability under the contract. Liability attaches under such a policy when death occurs, and the policy is in good standing irrespective of the cause of the death, whether it be brought about by natural causes, by intention, or by accident; and, in the broad sense, any life insurance policy is accident insurance, if perchance the death is occasioned by reason of an accident. On the other hand, the primary contingency insured against in an accident insurance policy is that no accident will befall the insured under the terms of the policy and in such time as the policy is kept alive. To be sure, a policy of accident insurance is life insurance in the broad sense, in that the insurer contracts to pay a certain sum of money when satisfactory proof is made that the insured has died as a result of an accident. See *Logan* v. *Insurance Co.* 146 Mo. 114, 47 S. W. 948; *Woodlock* v. *Aetna Life Insurance Co.* (*Sup.*) 225 S. W. 994.

In the instant proceedings it is admitted that the State of West Virginia did not recognize the petitioner as an insurance company, but it is nevertheless contended that the State, through its insurance department, did recognize it as carrying on an insurance business, and that the department had checked up the petitioner's books of account. Elaborate argument is made to the effect that although the petitioner is incorporated and acts as agent of the Inter-Ocean Casualty Co. in West Virginia and other States, it is, nevertheless, an insurance company in fact; that its authorization as agent is so broad as to constitute it an independent company; that it has liabilities to its policyholders and maintains reserves to meet such liabilities; and that the total of these reserves is held for the fulfillment of its contracts.

We do not think that it is necessary to answer all of the petitioner's arguments with respect to its claims that it is an insurance company. It is not recognized as such by the Insurance Department of the State of West Virginia. It is recognized only as agent of the Inter-Ocean Casualty Co. The policies which it issues are policies of that company. The fact that under its agreement with the Inter-Ocean Casualty Co. it had very broad powers does not change the fact that it was, nevertheless, an agent of that company. The evidence does not show that the petitioner is required to maintain any reserve funds for the fulfillment of the contracts of its principal.

The Inter-Ocean Casualty Co. is liable upon all of the policies and the State of West Virginia is satisfied to let it transact business in that State through the petitioner as its agent.

In *United States* v. *Fidelity Trust Co.*, 222 U. S. 158, the court stated with respect to the proper construction of section 3 of the Act of June 27, 1902:

\* \* \* The statute does not invite speculation in a new nomenclature, or attempt to reach profounder conceptions than those familiar to the law. When it speaks of interests absolutely vested in possession we presume that it uses familiar legal expressions in their familiar legal sense. \* \* \*

Applying this principle to the interpretation of section 242 of the Revenue Acts of 1921, 1924, and 1926, and to the evidence of record in this case, it is impossible to conceive how the petitioner has any valid claim to be classed as a life insurance company.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

Love, dissenting: I do not believe that the decision reached in this case is authorized by law. For the purposes of this dissent I accept the findings of the evidentiary facts as stated in the prevailing opinion. From those findings of fact the following conclusions of fact are inevitable, and as briefly as possible may be thus stated:

1. Petitioner is, and was during the years in question, a duly organized and chartered corporation.

2. It was chartered as an insurance agency and not as an insurance company, or a life insurance company.

3. Under its contract with the Inter-Ocean Casualty Co. it had authority to bind the Inter-Ocean Casualty Co. to the terms and conditions set out in the insurance policies issued by it, and hence to that extent and not otherwise, it was the agent of that company.

4. By bringing into the concept of the whole situation its contract with the Inter-Ocean Casualty Co., petitioner made itself liable and was primarily liable under those insurance contracts. It was not an indemnitor, because it was primarily liable and was bound to pay in the first instance.

5. It issued policies contracting to pay indemnity in the event of death, accident or sickness of the insured.

6. It issued such policies on its own responsibility, after making its own investigation, passing on the risk for itself, determining for itself the character of policy to be issued without any supervision or control whatever by the Inter-Ocean Casualty Co.

7. In the event a liability arose or was claimed by an insured, petitioner made its own investigation, determined the liability, *vel*

*non*, and adjusted and settled the claim without consulting the Inter-Ocean Casualty Co.; in the event a suit in court were instituted, regardless of who was made defendant in such suit, it responded to such suit, paid all costs and expenses thereof, and responded to the judgment of the court.

In other words, to use a homely expression, it was its own boss, and took orders from no one.

8. It received and retained for its own use and benefit practically the whole of every payment of premium on the policies issued by it.

9. It kept reserves in very substantial amounts to meet its liabilities under its insurance contracts, and not only 50 per cent, but the whole of that reserve, was dedicated to that purpose.

The statute involved in the issue in this case is section 242 of the Revenue Acts of 1921, 1924, and 1926, which provides:

That when used in this title the term "life insurance company" means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds.

The statute has thus defined "life insurance company." The Board is called upon to decide whether or not the petitioner, in view of the facts disclosed by the record before us, has brought itself within the ambit of that definition.

It will be observed that in the statutory definition an insurance company is presupposed. "Insurance company" is not defined; only "life insurance company" is defined. It follows therefore that any insurance company, a corporation, joint stock company, or a partnership, that is "engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds," is within the ambit of that definition. Petitioner seems to have qualified in every particular specified in the definition as a "life insurance company," provided it has first qualified as an *insurance company*.

As heretofore pointed out, the statute does not define "insurance company."

The petitioner is a corporation, and being a corporation, and not chartered as an insurance company, the query arises, Is it, or can it be, an insurance company? It certainly was in fact an insurer, and being a corporation engaged in issuing insurance policies, it must be in fact an insurance company. It may be that it was guilty of *ultra vires* acts, yet, nevertheless, under the facts in this case, it was liable on those contracts, and was in fact an insurance company. No one other than the sovereign that authorized

its existence and endowed it with all its rights and powers will be heard to complain of its *ultra vires* acts, if any.

It has been urged that it did not conform to the laws of West Virginia in the way of making reports to the insurance department. It may be that failure to do those things rendered it liable to the penalties prescribed (in the way of fines) but compliance with those regulations was not a prerequisite, a *sine qui non* to its existence as an insurance company.

Congress could have prescribed that no company other than a corporation chartered as an insurance corporation, or that no company other than a corporation chartered as a life insurance company could qualify under section 242 hereinbefore quoted, but Congress has not done so, and seems deliberately to have refrained from doing so.

Petitioner being an insurance company in fact, and having met every requirement contained in said section 242 defining life insurance company, I am not willing to undertake to write into that statute an additional requirement which Congress seems deliberately to have omitted.

It is urged that Congress did not have in mind such an organization as we are here dealing with, and legislative history is invoked to show that no such organization was contemplated. I see nothing in that legislative history that tends to exclude such an organization. It may be true, and likely is true, that no Congressman, or for that matter any one else, other than those who conceived the idea and organized the petitioner corporation, ever had such an idea in mind, but that situation does not preclude petitioner from the benefits granted in sections 243 and 244, if in fact it can qualify under section 242.

It is true that petitioner did not write big policies, did not engage in big business. It was designed to serve wage earners who were unable to pay large premiums and get large indemnity policies. It sought and obtained business so very modest in amount that one feels safe in saying that standard life insurance companies would have spurned such business as not worth while. Yet petitioner served a clientele that sadly needed such protection, and, while not claiming any altruistic motives, it did perform a welfare mission that should not be tabooed.

One who thinks out this problem finds himself asking the question, If the attention of Congress had been called to such an organization, would Congress have deliberately barred such an organization from the benefits granted to the big life insurance corporations? I do not believe it would have done so.

SEAWELL agrees with this dissent.