STREAT v. WHITE et al.

(*Circuit Court, S. D. New York.* July 2, 1888.)

PATENTS FOR INVENTIONS — PATENTABILITY — INVENTION—DESIGN PATENT FOR TEXTILE FABRICS.

Letters patent No. 16,375, issued November 10, 1885, to George Streat, for a design for printing textile fabrics, consisting of stripes of solid block of color parallel to and alternating with stripes crossed at right angles by alternate dark and light lines blended into each other by shading, "so as to imitate the woven fabric commonly known as 'seersucker,'" are void; it appearing that though the patentee conceived the idea of the imitation, which was not new, the actual invention of the method of producing the imitation by blending together the cross-lines by shading, which was alone novel, was entirely the work of the designer and engraver in the factory of one Gilmore.

In Equity. On bill to restrain infringement of letters patent.
Samuel R. Betts, for plaintiff.
Reuben L. Roberts, for defendant.

SHIPMAN, J. This is a bill in equity to restrain the defendants from the infringement of design patent No. 16,379, dated November 10, 1885, to George Streat, for a design for textile fabrics, specially to be employed in printing calicoes and similar fabrics. The leading feature of the design consisted in a stripe of a solid block of color, or in the form of dots or pin-points applied closely together, "parallel to and alternating with a stripe which is crossed at right angles by alternate light and dark lines, which are blended into each other by shading." The general color or tint of the stripes is immaterial. The claim is as follows:

"The design for textile fabrics herein shown and described, the same consisting of the stripes, *a, a,* parallel to and alternating with the stripes, *b, b,* the latter being crossed at right angles by alternate light and dark lines, which are blended into each other by shading, substantially as described."

This was intended to be and was an imitation in printed cloths of a well-known and popular woven fabric, called "seersucker," which presents a

smooth stripe parallel and alternating with a ridged or crinkled stripe. The object of the alternate light and dark cross-lines in the stripes, $b$, $b$, was to represent the crinkled effect of the corresponding woven stripe in the seersucker. The idea of imitating, in printed cloths, the woven seersucker was not a new one at the date of the alleged invention. It had frequently been attempted. Alternate light and dark cross-bars, at right angles with the stripes, to imitate the crinkled appearance of the ridged stripe, had been used; but I assume that the blending into each other of these lines by shading was novel. The design quickly attracted the fancy and the favor of the public, and became very popular. The point in the case which I deem of most importance and of most danger to the patent is in regard to the fact of invention by Streat. He conceived the idea of imitating a seersucker fabric, and of having one stripe crossed at right angles by cross-bars, in which there was no novelty, and then submitted the project of an imitation to Mr. Gilmore, the manager of a factory for printing cotton goods, with the request that he cause it to be produced; which was done by the designer and engraver in Gilmore's factory. The patentee now desires to represent, in general and somewhat vague terms, that he conceived the idea of the blending together of the cross-lines by shading, and desired Gilmore to have the idea carried out. If that had been the fact, he would have created a design which contained "a new impression or effect, produced by an arrangement or configuration of lines which introduces new elements of color or form," (*Packing Co.* v. *Rubber Co.*, 24 Blatchf. 345, 30 Fed. Rep. 785;) and, unless such imitation is within the engraver's customary art, I should not have been deterred from conceding to him a position as inventor by the fact that he was imitating an old woven fabric. Other persons had imitated it with varying success, but the patent shows a new combination of lines by which it was successfully reproduced. The difficulty in this case is to know what the patentee created; but his correspondence with Gilmore, before the design had been made or sketched by the engraver, is very significant upon this subject, and shows to my mind that he invented nothing except the idea of an imitation of a seersucker, and that the conception of the method by which the result was to be attained was entirely the work of the designer. The first communication of Streat to Gilmore was in a conversation on July 28, 1885. On July 29th he wrote Gilmore as follows:

"I herewith inclose a tintype which I had taken to-day from the sample of the seersucker which I retained after giving you the other half. I think it shows up the crinkle in the cloth plainly, and have no doubt your designer can imitate it accurately, which, if he succeeds, will, I think, lead to a good business in the goods. I think we should start right by having a good imitation in effect. Please let me hear from you as soon as possible in regard to this matter, as the goods will be wanted just as soon as we can get them out."

On July 30th, he wrote Gilmore again, as follows:

"In regard to the printed seersuckers I am enthusiastic. If the engraving is well done as an imitation of the woven, I am satisfied we can sell a large quantity, as we will give good goods and at a popular price. I inclose you

small sample of the dog's head, horse, horseshoe, as showing the class of work we want, *i. e.*, fineness. Can't you send me a sketch (before engraving) showing your designer's idea or conception of how the imitation should be? Just as soon as we can get an idea how it will look, will forward gray goods at once, as the trade are now ready to give orders. Please let me hear from you by return mail, if you can, as to how the matter is progressing," etc.

These two letters show that Gilmore and the designer were furnished with a sample of a seersucker, and with a photographic copy of the sample, and were told to imitate it, and that the way in which the imitation was to be effected was left with the designer, who was solely responsible for a successful result, and to whom the task of finding an idea or conception of the method of imitating the crinkle was solely committed. The case does not contain the facts which generally come before courts upon the subject of joint or sole invention. It is not that of an inventor and a workman who puts into form the inventor's new idea. The idea of Streat was old. Had it been new, the facts would be different. The invention consisted in the new and successful way by which the old idea was made effective. Streat was the originator of nothing novel, except indirectly. He asked the designer to furnish an accurate imitation of the seersucker, and, if invention was necessary, to invent an imitation, and his request was complied with. The bill is dismissed.