MATTHEWS & WILLARD MANUF'G CO. v. TRENTON LAMP CO. et al.

(Circuit Court, D. New Jersey. March 24, 1896.)

1. PARTIES IN EQUITY—PATENT INFRINGEMENT SUIT.
   In a suit against a corporation for infringement of a patent, officers of the company, who are mere employés, receiving a fixed salary, in no wise dependent upon the sale of the alleged infringing article, and who have not personally been guilty of infringement, are neither necessary nor proper parties defendant.

2. DESIGN PATENTS—WHO ENTITLED TO.
   Under Rev. St. § 4929, which authorized the issuance of a design patent to any person who, "by his own industry, genius, efforts, and expense, has invented," etc., the use of the word "expense" is not limited to mere disbursement of money, and does not prevent the granting of a patent to one who invents a design while in the employ of another, especially where it does not appear that any "expense" was necessary in producing the design.

3. SAME—LAMPS.
   The Miller design patents, Nos. 22,422, 23,672, 23,673, and the Miller & Schmitz patent, No. 23,671, for designs for certain parts of lamps, held valid.

These were four suits in equity by the Matthews & Willard Manufacturing Company against the Trenton Lamp Company and others for alleged infringement of certain design patents for lamps.

Charles L. Burdett and Lucien F. Burpee, for complainant.
Francis C. Lowthorp, for defendants.

GREEN, District Judge. There are pending four suits between the parties complainant and defendant, which relate to, and charge the infringement of, certain patented designs for lamps, or parts of

lamps. Upon the argument they were treated as one controversy, and properly so; for, while the several distinct designs are for specific and separate parts of a lamp, it is perfectly feasible to arrange in any one lamp at least two of the designs (if not more), and the sale of a single lamp, so prepared, may involve the infringement of the designs in question. The letters patent involved in this litigation are four in number, and are as follows: (1) No. 22,422, dated May 9, 1893, for design for lamp-fount holders. (2) No. 23,671, dated October 2, 1894, for design for lamp-fount holders. (3) No. 23,672, dated October 2, 1894, for design for bases for lamps. (4) No. 23,673, dated October 2, 1894, for design for bases for lamps. Patents No. 22,422, No. 23,672, and No. 23,673 were granted to John C. Miller, assignor to the Matthews & Willard Manufacturing Company of Waterbury, Conn.; and patent No. 23,671 was granted to John C. Miller and Edward Schmitz, assignors to said the Matthews & Willard Manufacturing Company, the complainant herein.

The bills of complaint are in the usual and orderly form. They allege that the patentees were, respectively, the first and original inventors and producers of the designs in question; that letters patent for said designs were duly granted and issued, and were duly assigned to the complainant; that the designs were popular, and the lamps embodying them in great demand, and that they were, respectively, of great value to the complainant; that said designs were duly stamped with the word "Patented," in accordance with the provisions of the statute; that the public generally have acquiesced in and respected the rights of the complainant thereto, except the defendants, who have, to the great damage of the complainant, infringed the letters patent by manufacturing, producing, and selling lamps embodying the several designs in question, and that, too, after notice had been given them of the alleged infringement.

The defendants have answered fully, and have set up the following defenses: First. Misjoinder of defendants. Second. Invalidity of the several patents sued on, by reason of want of jurisdiction of the commissioner of patents to grant the same. Third. Estoppel upon the complainant to sue the defendants for infringement of the several patents by reason of an implied license granted to the defendants under each of the said patents. Fourth. That the complainant is not entitled to recover damages or profits from any of the defendants by reason of the complainant's failure to properly mark the patented articles made and sold by the complainant under said letters patent respectively. Fifth. Noninfringement.

So far as the third and fourth defenses are concerned, it is sufficient to say that they are not justified by the evidence in the cause. On the contrary, the great weight of the testimony is against both. But one witness was produced by the defendants to prove a license. It is not necessary to analyze his statements in relation thereto. They are far from satisfactory. By his own admissions the implied license which he seeks to prove was wholly based upon a conversation with a sales agent of the complainant, who had no authority to license others to make the designs in question, and whose words, if they are correctly reported by this witness, convey not the slight-

est permission or grant of right to make such designs. Nothing occurred at the interview of which this witness testifies, accepting his statement as correct, which affords the least ground upon which to base an implied license to the defendants from the complainant to manufacture these patented designs. Besides, this witness is broadly contradicted by other witnesses who were present at the interview, and heard all the conversation between him and the sales agent; and, weighing these contradictory statements, it is not possible to sustain this defense.

Nor can the defense fourthly above pleaded avail the defendants. The evidence is quite satisfactory that upon these designs was placed a label bearing the word "Patented," as required by the statute. The negative testimony of the one witness who declared that he "had handled a good many hundred dollars' worth of these goods [lamps], and had never seen one marked yet," cannot be permitted to outweigh the positive testimony of four witnesses to the effect that after the granting of the letters patent all designs protected thereby were duly stamped or labeled "Patented."

The fifth defense, of noninfringement, is practically abandoned. The proofs of infringement are so ample and satisfactory that the counsel for defendants, in his brief, is forced to admit "there is no question that the defendant, the Trenton Lamp Company, made and sold articles embodying the designs shown and claimed in each of the patents in suit. They were precisely similar in configuration and appearance." And in this statement is tersely summed up the testimony.

Only two of the defendants can avail themselves of the first defense, and as to them it seems to be properly interposed. The bill charges Francis W. Rockhill and Barclay L. Stokes with infringement of the letters patent, and the same decree is prayed against them as against the principal defendant, the Trenton Lamp Company. The answers filed distinctly aver that Francis W. Rockhill was formerly secretary of the defendant corporation, but that he never was a stockholder nor a director therein, nor derived any profit from his connection therewith, excepting his regular stated salary, and that he had no direction or control whatsoever of its affairs, excepting as a subordinate officer, and no authority to concern himself with the making, using, or vending of the alleged infringing articles. The answers also show that the said defendant Barclay L. Stokes is and has been the treasurer of the said defendant company, and is and has been a stockholder and director therein, but has at no time had any direction or control of the making, using, or vending of the alleged infringing articles, or any colorable imitation thereof, and had no knowledge whatsoever in the premises. The same benefit of this defense, raised thus by the answers, is prayed as if the same had been set up by plea. The testimony of the witness John W. Wilkes proves the statements contained in the answers in this behalf. These averments and this testimony are not impeached or controverted, and full credit must be given to them.

The principles of equity pleading require that all parties interested in the subject-matter or issue of the suit, and who must necessarily

be affected by the decree, must be made parties thereto. But it is quite certain that neither of the defendants Rockhill nor Stokes have a scintilla of interest in this controversy or its final outcome. They are simply employés of the defendant company, receiving in return for their services fixed salaries, in no wise dependent upon the sales of the infringing lamps. They do not appear to be interested in the infringement of which their employer has been guilty, nor have they personally been guilty of infringement themselves. Under such circumstances they cannot be held responsible in these actions. The safer rule to be applied in the making of officers, agents, and employés of a corporation parties defendant in a suit in equity to restrain infringement of letters patent is that every agent who performs acts of infringement, and all stockholders, directors, and other officers, who, in the prosecution of the business of the defendant corporation, authorize them, are personally responsible to the patentee complainant; otherwise they are neither necessary nor proper parties. It follows that as to these two defendants, Rockhill and Stokes, the bill must be dismissed.

The last defense to be considered is certainly a novel one. As stated in the answer, it is as follows:

"And these defendants further say that the said letters' patent are invalid, because the said design for lamp-fount holders which is the subject-matter thereof was not produced by the said John C. Miller at his own expense, as well as by his own genius and effort, as is, by the statute in such case made and provided, required."

And under this averment the defendants contend that by the law the applicant for a design patent can only lawfully receive letters patent when he has invented and produced the design sought to be patented "by his own genius, efforts, industry, and expense" (Rev. St. § 4929); and that in the cases now under consideration the applicant did not invent and produce the patented designs at his own expense. To maintain this proposition, the counsel for defendants has delivered an argument which is undoubtedly very acute, but scarcely accurate. That it may be the more plausible, and that it may to some extent be based upon fact, he limits the word "expense" to mere "pecuniary expense," and he proves by the cross-examination of the patentee that he did not expend any money in the production of these designs; that in fact the patentee was employed, at a regular salary, by the complainant as a "designer" in brass, and it was in the course of his regular employment, and during the fixed and regular hours of work, that he invented and produced the designs. And the insistment is that the designs were really produced at the expense of the complainant. This can hardly be assented to. No authority can be found to compel the limitation of the word "expense," in the construction of this statute, to the "expenditure of money." It may, indeed, be defined as a "disbursement of money," but it is as well "the employment and consumption of time and labor." Cent. Dict. tit. "Expense." This statute, then, has made use of a word, in its expression, which bears rightfully two meanings. Which should be accepted as the more proper? Certainly that which common sense and good faith will approve; for the ob-

ject in construing a statute must always be, not to bend and twist and shape the text until it is forced into apparent harmony with some doubtful claim, or into the mold of a preconceived idea, but simply and solely to discover, disclose, and fix the true sense, whatever that may be. And in judging of and in weighing proposed constructions of statutes it is a leading principle that every interpretation which leads to an absurdity must be rejected. Now, the purpose of the statute in question was to secure to those who should invent and produce a new and original design a monopoly in the design for a certain number of years. It was practically the offering of a prize to inventive genius. It was directed to, and included within its terms, everybody, without regard to nationality, residence, or condition in life. The learned and the illiterate, the strong and healthy, the weak and the invalid, the rich and the poor, each would be rewarded under the statute if inventive genius were found in the design created. This being the admitted object, it must be assumed that the legislative power which made the enactment selected and used such terms, phrases, and words as would surely and certainly accomplish the desired result. Yet, if the construction contended for by the counsel for defendants prevails, it seems that the statute would fall far short of its purpose, and would wholly fail to offer any reward to one class of inventors, who, in preference perhaps to all others, should have been the beneficiaries under its bountiful provisions; for if the word "expense" is to be limited in its meaning to the "disbursement of money" which belongs to the inventor and would-be patentee, then he who has not the means—the money—to disburse in the realization of his mental conception of a design would be forever barred from obtaining the fruits of his inventive genius and aesthetic taste, though the design he had conceived were never so novel, never so pleasing, never so beautiful. Clearly, such a construction of this statute would be an absurdity, and ought not to obtain.

It might be said with reference to the question now under consideration that, even if the construction of the defendants touching the statute was sound, it could not avail them in these actions. Prima facie, the letters patent are evidence that all the requirements of the statute have been fully complied with; and if it be true that the patentee has been at no pecuniary expenditure in realizing his conception of the designs, it simply follows that there was no such expenditure demanded by the circumstances. The defendants do not show that any expenditure of money became necessary from the first conception of the designs in the brain of the inventor, until the application was made for the letters patent; and if no "expense" was necessary, no "expense" was to be looked for. In such case the argument against the validity of the letters patent based upon the failure of the inventor to expend money, personally, in producing a physical representation or model of the design falls, as it has no support from the facts.

As was said before, this defense is a novel one. Although all the acts touching design patents have employed the words now under consideration practically since the act of 1842, yet the question de-

bated seems to be mooted now for the first time. A very thorough search has failed to reveal a single reported case in which the attention of the court has been called to this word "expense." The other words, however, which appear in the context have, at times, received construction. These words, as has been stated, are, "any person, who by his own industry, genius, efforts, and expense, has invented," etc. In the case of Sparkman v. Higgins, 1 Blatchf. 205, Fed. Cas. No. 13,208, it appeared that one Kelsey claimed to be the original inventor of a certain pattern (or design) to be printed upon cotton goods. The defendants were enjoined from infringing by a preliminary injunction. The defendants moved upon affidavits to dissolve the injunction. By the affidavits it was shown that Kelsey, the alleged inventor, did not make the design or pattern personally, but employed one Berry to make it from suggestions which he made to him, and the insistment was that Berry was the real inventor, under the statute. But Judge Betts retained the injunction. He said:

"To constitute an invention, it is not necessary that he should have the manual skill and dexterity to make drafts. If the ideas are furnished by him for producing the result arrived at, he is entitled to avail himself of the mechanical skill of others to carry out practically his contrivance."

The same principle obtained in Streat v. White, 35 Fed. 426, reported in Fent. Pat. 125. In this case the letters patent were for a design for textile fabrics, the leading feature of which was stripes of a solid block of color, parallel to and alternating with stripes which were crossed at right angles by alternate dark and light lines blended into each other by shading, and which was intended to be an imitation in printed cloth of the woven fabric commonly called "seersucker." A bill being filed to restrain an alleged infringer, it appeared that, though the patentee conceived the idea of the invention which had been previously attempted by others, the actual invention of successfully producing the imitation by blending together the cross lines by shading, which was alone novel, was entirely the work of the engraver of the design at the factory where made. Judge Shipman held that the letters patent were void, but said, in effect, that if the patentee had conceived the idea of the blending together of the cross lines by shading, though he did not actually do the work, the patent would have been sustained.

It seems perfectly fair to argue from these cases that if the industry and efforts expended in the production of a design need not be the personal industry or the personal efforts of the patentee, then the expense alluded to need not be a personal expense of the inventor. It is the conception of a design as the result of inventive genius which characterizes the inventor. The realization of that conception may be brought about by any means which the inventor may fairly control or obtain. There must be a decree for the complainant.