STATE OF FLORIDA, *ex rel.,* CARY D. LANDIS, Attorney General, *Plaintiff in Error,* v. DeWitt C. JONES COMPANY, a Corporation, *Defendant in Error.*

147 So. 230.
Opinion filed March 9, 1933.
Re-hearing denied April 10, 1933.

Quo Warranto by the State on relation of Cary D. Landis, Attorney General, against DeWitt C. Jones Company, a corporation. Judgment for respondent and relator brings error. Reversed.

*Hull, Landis & Whitehair,* of DeLand, for Plaintiff in Error;

*Hampton & Jordan,* and *Fielding & Duncan,* all of Gainesville, and *J. Turner Butler,* of Jacksonville, for Defendant.

HOBSON, Circuit Judge.—This is a suit by quo warranto in the name of the State of Florida on relation of Cary D. Landis, Attorney General, to revoke, annul and cancel the charter of the defendant in error, respondent below. The court below sustained a demurrer to the information and, subsequently, plaintiff in error having insisted upon the suffi-

-ciency of the information, the Trial Court entered a final judgment on demurrer in favor of the defendant in error. Each of these rulings of the Trial Court is assigned as error.

The information in *quo warranto* charges the defendant in error with using its corporate charter for purposes inconsistent with those stated in said charter and for purposes not authorized by law and contrary to law, in that the defendant in error is engaged in the sick and funeral benefit insurance business and other like businesses for profit. There were two exhibits attached to the information, one being a copy of the Certificate of Incorporation of DeWitt C. Jones Company, a corporation, Exhibit "A," the other being a copy of a Funeral Service Contract, issued by DeWitt C. Jones Company to one C. E. Rieck, Exhibit "B."

Plaintiff in error contends that the so-called funeral service contract constitutes a policy of insurance and more particularly a policy of sick and funeral benefit insurance, as defined by the statutes of the State of Florida.

Defendant in error contends that this so-called funeral service contract does not constitute a contract of insurance, but is a contract to render personal service, and that the defendant in error had a right to issue such contract although admittedly it is not authorized or empowered to engage in the insurance business generally or in that type of insurance business known as sick and funeral benefit insurance, said defendant in error having been incorporated under the general incorporation statute and not under any statute relating to insurance companies.

Whether the defendant in error, by the issuance of so-called funeral service contracts, is engaging in insurance business within the purview of the insurance statute of the State of Florida, as set forth under Section 6260, Compiled

General Laws of Florida, 1927, is the sole question presented to this Court.

In construing contracts, such as the contracts before the Court in this case the decisions throughout the country are almost unanimous in holding such contracts to be contracts of insurance and subject to control under the insurance statutes.

State ex rel Coleman v. Wichita Mutual Burial Assn. et al., 73 Kan. 179; 84 Pac. 757;

State ex rel. Fishback v. Globe Casket and Undertaking Co., 82 Wash. 124, L. R. A. 1915 B. 976, 143 Pac. 878;

State v. Willett, 171 Ind. 296; 86 N. E. 68, 23 L. R. A. (N. S.) 197;

Sisson ex rel. Nardolillo v. Prata Undertaking Co. 49 R. I. 132, 141 Atl. 76;

Renschler v. State, 80 Ohio St., 363, 187 N. E. 758; L. R. A. 1915-D, 601.

63 L. R. A. 723-725 in cases therein cited.

Defendant in error cites several cases in support of its contention; in none of said cases, however, do we find the exact question herein presented passed upon. The case relied upon most strongly by the defendant in error, viz.: State ex rel. Atty. Gen. Sheets v. Pittsburg, C. C. & St. L. Ry., Co., 68 Ohio St., 9; 67 N. E. 93; 64 L. R. A. 405, 96 Am. St. Rep. 635; is clearly distinguishable from the case at bar.

The Court, in deciding whether the Relief Department of the Railroad was conducting an insurance business, said:

"Is this an insurance business? It is not held out to be such. The objects stated in the organization and regulations are clearly otherwise. Neither the railway company, nor its relief department, advertises for or in any other way

solicits patronage. The members of the fund are volunteers. The business transacted, while in part done by an officer of the company, aided by representatives of the members, is not mingled with the business and accounts of the railway company. It has no offices set apart from an insurance business and has no agents to promote its interests. It does not undertake to insure or indemnify against either sickness, accident or death. Such is not the language or spirit of the relation between the member and the fund. On the contrary, in case of sickness or injury the members may draw from the relief fund what they mutually have created from a portion of their wages retained for that purpose, and the payment of a loss on a risk named in a policy or other instrument of insurance. This differs from an insurance business as commonly, and, we might say universally, conducted. It is organized on an insurance basis—advertised as such. It needs and uses agents to represent it, and it solicits from the general public. It has offices and current expenses, etc.; and, to protect the public, insurance laws have been enacted, requiring publicity of its resources and methods of business, and in most cases periodical sworn statements of the condition and extent of the business being transacted. All this to prevent imposition upon the public, which might be misled by the representations of agents, or by published inducements for patronage. Another marked distinction between the relief department and the insurance business is that there is no profit to the railway company, and no profit, in the business or commercial sense, to the members of the fund, except such increase of the fund as may arise by way of interest on its investment in cases of a surplus. Those who organize or embark in insurance business have profits in view as a recompense for the industry, ability and capital invested, and it would be a strange in-

surance business that would omit this great incentive from its plans and purposes."

In that case, the Court was considering a voluntary relief department of the railroad company, the members of which were mere volunteers and were employees of the said railroad company. It is to be noted also that neither the railroad company nor the relief department was operating said department for profit, and did not, through agents or otherwise, solicit business from the general public. The Court specifically states that the relief department did not "undertake to insure or indemnify against either sickness, accident or death."

Bouvier's Law Dictionary, page 1008, under the heading of "Insurance," defines an "insurance contract" to be one "whereby, for an agreed premium, one party undertakes to compensate the other for loss on a specified subject, by specific perils."

In Commonwealth v. Beneficial Assn., 137 Pac. 412, 18 Atl. 1112, it is said:

"A contract of insurance is purely a business adventure, not founded on any philanthropy or charitable privilege; and the design and purpose of an insurance company and the dominant and characteristic feature of its contract is the granting of an indemnity, or security against loss, for a stipulated consideration.

In Cooley's Brief on L. of Ins. Vol. 1, p. 5, an insurance contract is defined as:

"An agreement by which one party for a consideration promises to pay money, or its equivalent, or do some act of value to the assured, upon the destruction or injury of something, in which the other party has an interest."

The Texas Court of Appeals, in the case of National Auto Service Corporation, v. The State of Texas, not yet in the

bound volume, however, the opinion is found set forth in full in The United States Daily of December 29th, 1932, said:

"Whether or not a contract is one of insurance is to be determined by its purpose, effect, contents and import and not necessarily by the terminology used, and even though it contain declarations to the contrary. So. Surety Co. v. Austin, 17 S. W. (2) 776; Allin v. Motorists Alliance, 29 S. W. (2) 23. Nor is it essential that loss, damage or expense or expense indemnified against necessarily be paid to the contractee. It may constitute insurance if it be for his benefit and a contract on which he, in case of a breach thereof, may assert a cause of action. Allin v. Motorists Alliance, *supra;* 63 A. L. R. 715."

In the funeral service contract before the Court, we find DeWitt C. Jones Company, a corporation, although not designated as such, occupying the position of an "insurer," C. E. Rieck by the same token the "insured," the annual dues and assessments amounting to a "premium," and, though not specifically named therein, there is a "beneficiary." The beneficiary being, as was stated in the case of State ex rel. Fishback v. Globe Casket and Undertaking Co., *supra,* "the person who would otherwise be obligated to pay the expenses of the burial." In commenting upon the fact that no beneficiary is named in the contract, the Supreme Court of Kansas, in the case of State ex rel. Coleman v. Wichita Mutual Burial Assn. et al. 2 *supra,* said: "The fact that no beneficiary is specifically named deserves little consideration, since in reality one exists and may be ascertained with as much certainty as if directly and specifically mentioned. Whoever would otherwise pay the burial expenses of the deceased member is, by being relieved of that burden, as directly benefitted to the amount of such expenses, as if

the cash was paid immediately to such person." It is quite evident from a cursory examination of Exhibit "B" that the agreement upon the part of DeWitt C. Jones Company to perform the services therein mentioned becomes obligatory only upon the death of the owner and holder of said contract. Every element of an insurance policy is contained in this contract.

Thus it is seen that this contract falls under the general classification of insurance contracts. The Legislature of Florida, in its wisdom, has seen fit to specifically classify and define sick and funeral benefit insurance, and, having so subdivided the general subject of insurance, it becomes necessary for this Court to consider this contract in the light of such specific classification, which brings us to the real question before the Court; whether or not this particular contract comes under the specific classification of sick and funeral benefit insurance, as defined by Section 6260, Compiled General Laws of Florida, 1927, which section reads in part as follows:

"Sick and funeral benefit insurance is hereby defined as any policy, contract or agreement whereby a company, corporation or association stipulates to provide for the insured either medical attendance, medicine, care during disability caused by sickness or injury, expenses of funeral in case of death, or the money necessary for any or all of the aforesaid purposes in lieu of such services."

Defendant in error contends that, since in the above statutory definition only "expenses of funeral in case of death" are included, in the issuance of its funeral service contract, it is not engaging in the sick and funeral benefit insurance business.

Counsel for defendant in error makes the mistake of giving too narrow and restricted a meaning to the word "ex-

penses." Unquestionably "expense" means an outlay of money, however, in its most comprehensive sense, it likewise means the expenditure of time, labor and thought. Matthews & Willard Mfg. Co. v. Trenton Lamp Co. (U. S.) 73 Fed. 212.

In Century Dictionary, under "expense," we find this definition, "the employment and consumption of time and labor."

Webster's New International Dictionary defines "expense" as "act of expending, disbursement, expenditure, etc.," and the same work gives one the information that the word "expense" had its origin in the Latin word, "*expendere*"; "*ex*" meaning "out" and "*pendere*" meaning "to weigh," and states the meaning to be "to consume by use in any way * * * to spend; * * * to expend time, labor and thought."

Since the Legislature, in enacting this Statute, used a word which is susceptible of more than one meaning, shall we say that the legislative intent was to limit or restrict its meaning when another interpretation equally as correct might also be given which is not inconsistent with and in fact assists in effectually carrying out the real purpose of the Act? We think not. It is clear that the Legislature had in mind regulating the business of any company, corporation or association which might contract to care for the sick and/or bury the dead and in so regulating such business protect the general public against possible fraud and imposition. Surely, it is no mere coincidence that the Act reads "provide for the insured * * * expenses of funeral in case of death." It would have been such a simple matter to have changed the word "provide" to "pay" when it came to the provision referring to "expenses of funeral in case of death," had it been the intention of the law-making body

to restrict the meaning of the word "expenses." The fact that the statutory definition is concluded by the provision "or the *money* necessary for any or all of the aforesaid purposes in lieu of such *services* (italics ours) is significant, and, we believe, further furnishes an index to the legislative mind. "The object in construing a statute must always be not to bend and twist and shape the text until it is forced into apparent harmony with some doubtful claim or into the mold of a preconceived idea, but simply and solely to discover, disclose and fix the true sense, whatever that may be." Matthews & Williard Mfg. Co. v. Trenton Lamp Co., *supra.*, "Supreme Court must glean legislative intent from language of statute, subject regulated, purpose thereof, and means of accomplishing it." State ex rel. Keefe et al. v. City of St. Petersburg, et al., 145 So. 175.

In agreeing to conduct the funeral in the event of the death of the holder of the contract, the Association obligates itself to provide and expend the time, labor and thought necessary in the conduct of any funeral.

If, however, the interpretation given the word "expenses" by counsel for defendant in error were the only proper meaning to be given the word as used in this statute, we would still be of the opinion that this contract is a funeral benefit insurance contract, as defined by the statute, for, upon examination of Exhibit "B," called a "funeral service contact," under the general head of "conditions, benefits and privileges," and sub-head "Territorial restrictions to benefit," we find the following:

"It is agreed that the funeral as set forth above shall apply to the territory included in a radius of sixty (60) miles from the office of the funeral director named in the face of this Certificate and if this Class "C" member should die beyond the territory included above, then the ASSOCIATION shall upon

notice from the family, relatives or friends of the deceased have the right to exercise either of the three following options: First: To arrange to care for the funeral as set forth in praragraph captioned "amount of benefit." Second: Immediately ship by prepaid express to a mortician or funeral director at or near the place of death a casket as specified above and shall allow the mortician or funeral director the sum necessary to cover the expenses of embalming, hearse service, two automobiles, the opening and closing of the grave, and other services given by a funeral director in the conduct of a funeral for a Class "C" member. Third: To make arrangements with a funeral director at place Class "C" member dies, for a funeral as provided for a Class "C" member. *The Association to pay* (italics ours) the said funeral director for this service upon proof of death on forms to be provided by the ASSOCIATION. It being expressly agreed that under no circumstances shall either of the above options exceed the expenditure of Two HUNDRED AND FIFTY ($250.00) DOLLARS:"
and we think that this agreement, though optional, on the part of the defendant in error (being referred to in the contract as the *"Association"*) to pay to some funeral director at a distant point a sum of money not in excess of two hundred and fifty dollars for conducting a funeral for the holder of the certificate clearly takes this contract out of the class of a strictly personal service contract.

This contract, viewed from any angle, provides for "expenses of funeral in case of death" or the money necessary for the funeral in lieu of the services of the defendant in error, and constitutes a Sick and Funeral Benefit Insurance Contract, as defined by Section 6260, Compiled General Laws of Florida, 1927.

The demurrer should have been overruled and it therefore follows that the judgment should be reversed.

Reversed and remanded for further proceedings not inconsistent with this opinion.

WHITFIELD and BUFORD, J. J., concur.

BROWN and TERRELL, J. J., dissent.

DAVIS, C. J., disqualified.

ELLIS, J., disabled because of illness.