## West Hazleton Borough Auditors' Report

*James Hiscox*, for appellants.

*John H. Bigelow* and *Elwood Jones*, for West Hazleton Borough.

PINOLA, J., March 16, 1950.—This is an appeal by taxpayers of the Borough of West Hazleton from the report of the auditors of the borough for the year 1947.

It involves the following items:

1. Payment of $75 made to each of three councilmen for expenses in connection with attendance at the borough convention.

2. Failure of members of council to repay $17,000 in temporary loans from funds pledged for the same.

3. Failure of councilmen to obtain a better rate of interest on balances in sinking funds.

4. Failure of auditors to set forth the date of maturity of respective forms of funded debt.

Counsel on both sides have furnished us with briefs setting forth their respective contentions.

From the testimony, we make the following

### Findings of Fact

1. On January 4, 1947, all councilmen being present, in pursuance of a motion, duly adopted, the president of the borough council appointed Frank Ksanznak, Leon Levitsky and Ben Lodderhose as delegates to attend the borough convention to be held February 27, 28 and March 1, 1947, at Harrisburg.

2. At a meeting of the borough council on February 21, 1947, all councilmen being present, a motion was made and carried "to advance $75 expenses to each delegate to the convention".

3. On February 24, 1947, three checks were issued, each in the sum of $75, payable to Frank Ksanznak, Leon Levitsky and Ben Lodderhose, all of which were cashed on February 26, 1947.

4. The delegates did not file itemized statements of their expenses until April 9, 1949, at the hearing on the appeal from the audit.

5. The itemized expenses of each of the delegates, which total $83.64, include three days' wages at $12 per day.

6. On January 4, 1947, all six councilmen voting in favor, the council borrowed $18,000 on a temporary loan from the Miners Bank & Trust Company of West Hazleton and pledged as security for the payment of the loan, taxes levied for general borough purposes and the proceeds of liquor license funds. On this date the

budget for the year 1947 could not have been adopted nor could the ordinance levying the taxes have been adopted.

7. On March 21, 1947, Councilmen Berge, Ksanznak, Levitsky and Heckler voted for a resolution to borrow $5,000 on a temporary loan from the bank, pledging the same assets.

8. On June 20, 1947, all six councilmen voted for a resolution borrowing $2,000 from the same bank, pledging current taxes for the payment of the loan.

9. From the proceeds of the loan of January 4th, $8,000 was used to pay off a temporary loan of the preceding year.

10. At a meeting held on October 16, 1947, all six councilmen voted to pay off as much of the Miners Bank & Trust Company temporary loans as possible.

11. On October 16, 1947, $8,000 was paid on the loan of January 4, 1947, together with $54.67, interest to November 10, 1947.

12. The borough received from current taxes the sum of $21,367.13 as compared with anticipated sum of $17,035.39, and the sum of $7,275 from liquor licenses as against the anticipated sum of $6,875.

13. On December 31, 1947, there was still due and unpaid to the Miners Bank & Trust Company on temporary loans made during the year 1947, the sum of $17,000.

14. Instead of repaying the temporary loans, the councilmen used $1,462.19 of the tax money for the payment of obligations incurred in excess of those provided for in the budget for the year 1947.

15. Because certain anticipated revenues failed, the councilmen used $12,336.21 of the tax money which should have been applied to the repayment of temporary loans to pay current bills.

16. On December 31, 1947, there was in the general fund $3,201.60 which could and should have been applied to the repayment of temporary loans.

17. The smallest balance throughout the year 1947 in sinking fund no. 4 was $60,156.92. At the rate of 1 percent, the borough should have received $601.56 interest on said balance. Instead it received only $379.35, the difference, to wit, $222.21, was lost to the borough.

## Discussion

1. *Convention expenses.*—The failure to file itemized statements of the actual expenses should result in a surcharge: Likovich Appeal, 347 Pa. 40. However, since they were presented at the hearing on these exceptions, we do not feel that the members of council ought to be surcharged if the expenditures are proper.

Appellants have questioned the propriety of paying the councilmen $12 per day for loss of wages.

Section 1017 of the Borough Code of May 4, 1927, as amended, P. L. 519, 53 PS §12907, provides:

". . . In addition to any compensation allowed by law the actual expenses of the delegates, including transportation incurred by delegates for or incident to such meeting, shall be paid by the borough. The time spent in attending said meeting shall not be more than three days, exclusive of the time employed in travel thereto and therefrom."

The words "actual expense" have been defined by certain courts.

In State v. DeWitt C. Jones Co., 108 Fla. 613, 147 So. 230, the court held that the term "expenses" within a funeral service contract means an outlay of money, and the expenditure of time, labor and thought, the employment and consumption of time and labor.

This is in accord with the decision in Matthews & Willard Mfg. Co. v. Trenton Lamp Co. et al., 73 Fed. 212, citing Century Dictionary. There the court declared that the word "expense" may be defined as a disbursement of money, but it is as well "the employment and consumption of time and labor".

In In re VanKleeck's Estate, 20 N. Y. S. 85, where the code provides that the surrogate cannot allow costs, "other than actual expenses" out of an estate or fund of less than $1,000 in amount or value, it was held that an administrator was entitled to an allowance for the time occupied in the trial, etc., as for "actual expenses".

This statute must have a reasonable interpretation.

We do not believe that the legislature intended that delegates should absorb the loss of wages resulting from attendance at borough conventions. If such were true, many honest and deserving persons serving as councilmen would be deprived of the benefits derived from attendance at such conventions. We believe that loss of wages is an actual expense.

In passing, we point out that the borough should not advance money to delegates. They should attend at their own expense and on their return they are to be reimbursed upon presentation of itemized accounts.

2. *Temporary loans.*—When the first temporary loan, that of January 4th, was made in the sum of $18,000, the budget had not been prepared and adopted by the borough council, and the taxes had not yet been levied, so they could not be pledged. That loan was illegally made.

The statute is mandatory—council is required to repay these loans "from the *first moneys* available from taxes, in anticipation of which the same were made": Section 1005 of the Borough Code, as amended, 53 PS §12895. Yet these councilmen only repaid $8,000 of a total of $25,000 and left $17,000 still due at the end of the year.

We have examined the auditor's report for the year 1948, which is a matter of public record, and find that the borough council borrowed on temporary loans the sum of $27,500 during that year, making a total due on temporary loans of $44,500. They paid off during that year $31,500, leaving a balance at the end of the

year of $13,000. This temporary loan practice is unwise, to say the least. It may well be that it is used to circumvent the law and to permit the assessment of taxes in excess of statutory limits. At any rate, here it has resulted in the payment of bills totaling $1,462.19 for which no provision whatsoever was made in the budget of 1947. And this, notwithstanding the fact that while the anticipated revenue for general current expenditures was $17,035.39, the borough got from that source, $21,367.13, and while the anticipated revenue from liquor licenses, etc., was $6,875, it received $7,275.

As we see it, there is no legal justification for the payment of the $1,462.19.

Section 1005 of the Borough Code, as amended (53 PS §12895) provides:

"The council of the borough shall have power:

"VIII. To make, authorize and ratify expenditures for lawful purposes from funds available therefor or from funds borrowed within legal limits."

This is a new subdivision added July 10, 1947, effective July 1, 1947.

Section 1006 of the Borough Code, as amended (53 PS §12896) prescribes the duties of council and provides that *payment shall not be* authorized or *made* from the treasury of a borough *except upon appropriation in the annual budget or supplementary appropriation resolutions.*

Section 1305 of the Borough Code, as amended (53 PS §13395) requires the preparation of the budget during January of each year.

After notice given as prescribed by section 1306 of the Borough Code, as amended (53 PS §13396), under section 1307 of the Borough Code, as amended (53 PS §13397), council can revise and complete the budget. That section clearly states:

". . . Such expenditures, whether by ordinance or motion, shall then be considered as appropriations affecting the budget."

Upon adoption of the budget the borough council shall "adopt an ordinance levying the tax for the fiscal year": Section 1308 of the Borough Code, as amended, 53 PS §13398.

Section 1309 of the Borough Code, as amended (53 PS §13399), provides:

"The council in its reasonable discretion may, by motion, modify the budget after its final adoption. New appropriations, supplementary appropriations and transfers from one appropriation to another may be made during the fiscal year, either before or after the expenditure is authorized or ratified after the expenditure is made, provided it is within the current year's revenues, or the money therefor promptly made available through borrowing as allowed by law."

While, according to respondents' exhibit 3, the expenditures in the police, fire, street and highway, insurance and sinking fund divisions exceeded the receipts by $2,794.53, they have referred to transfers made in December from various other funds to the funds in which the shortages appeared with one exception, it does not appear that any transfer was made to the sinking fund of the sum of $693.21. This seems to correct the defects on the surface, but not in fact. The receipts of the general fund from taxation exceeded the budget by $4,331.61. The receipts from the State exceeded the budget by $400, so that the receipts exceeded the budget in these two items in the sum of $4,731.61. There was $3,201.60 left in the general fund at the end of the year, so of the excess $1,530.01 had been spent. Furthermore, $1,462.19 of the proceeds of the temporary loans were spent. This makes a total of $2,992.20, which is close enough to the amount of $2,794.53 given by respondents

in exhibit 3. Respondents themselves admit that they used $1,462.19 of the temporary loan proceeds. It follows that there has been some juggling of funds in order to justify the transfers totaling $2,794.53.

On the basis of their own evidence, we are required to surcharge them in the sum of $1,462.19, unless we are prevented from so doing by the provisions of the Act of May 15, 1945, P. L. 538, 65 PS §191, which reads as follows:

"No elected or appointed official of any political subdivision shall be surcharged for any act, error or omission in excess of the actual financial *loss sustained* by the political subdivision by reason thereof, and the surcharge of any such official shall take into consideration as its basis, the results of such act, error or omission and the results had the procedure been strictly according to law."

or section 1035 of the Borough Code, as amended (53 PS §12981), which reads as follows:

"(c) The amount of any balance or shortage, or of any expenditure of a kind, or made in a manner, prohibited or not authorized by statute, which causes a financial loss to the borough, shall be a surcharge against any officer against whom such balance or shortage shall appear, or who by vote, act, or neglect, has permitted or approved such expenditure, but no elected or appointed official of a borough shall be surcharged for any act, error or omission in excess of the actual financial *loss sustained* by the borough, and any surcharge shall take into consideration as its basis the results of such act, error or omission and the results had the procedure been strictly according to law."

Neither act applies in case of fraud or collusion.

In construing a similar act, the Act of May 29, 1931, P. L. 243, governing school districts, the Supreme Court said in Scranton School District Audit (No. 1), 354 Pa. 225, 231:

"It is true that in construing the Act of June 9, 1911, P. L. 865, . . . it has been held that by 'financial loss' was meant the entire amount of any payment illegally made and not merely the difference between the sum paid and the actual value of the work done: (citing cases). A similar construction cannot, however, be given to the words 'loss or damage' as used in Section 13 of the Act of 1931, for otherwise the amelioration in the pre-existing law which this amendment was obviously intended to effect would be wholly illusory and unavailing."

The court found that if the contracts had been let the cost would have exceeded the amount spent for repairs by the district. It then said (p. 230):

"Even if their failure to comply with the provisions of the Code had been a conscious dereliction on their part it would not necessarily have stamped their action as dishonest. Honesty is concerned with the moral rather than the legalistic import of an act; these directors were not guilty of any moral turpitude."

What Judge Reno said in Kistler et al. v. Carbon County et al., 154 Pa. Superior Ct. 299, about a county budget is applicable here (p. 301):

"A budget . . . is more than a mere estimate of probable revenues and expenditures. It is a method whereby expenditures are controlled and limited during the fiscal period by designating the amounts of money legally at the disposal of the commissioners, and the purposes for which they may be expended. Construing similar legislation applicable to cities of the first class, it was held that such a provision is not merely directory, but that it is in the highest degree mandatory."

Here we have councilmen, who, being fully aware that their revenues were running far short of the anticipated amounts from certain sources, used not only $4,731.61 in excess revenues to pay their current

bills, but spent $1,462.19 for items which are not in the budget at all and for which no provision whatsoever was made.

We are in no position to ascertain definitely what was done with the $1,462.19. The burden was upon the councilmen to establish the legality of these expenditures or to bring themselves within the provisions of the two statutes above quoted. They have done neither. There is nothing left for us to do but to surcharge them, which we do, in the sum of $1,462.19.

Perhaps we should surcharge these councilmen in the full sum of $17,000 because they have deliberately violated a mandatory law of the legislature when they failed to pay the loans. This practice is all too prevalent and we want it distinctly understood that our action in this case is in no wise to be taken as any indication of what we might do in the future under similar circumstances.

3. *Loss of interest.*—Appellants claim that the councilmen caused a loss to the borough in the sum of $700 through their failure to invest the balances in the sinking funds.

Section 1005 of the Borough Code, as amended (53 PS §12895), provides that:

"The council of the borough shall have power:

VI. To make temporary investment of borough funds, whether they be general, special or sinking funds in bonds of the Federal Government, the Commonwealth of Pennsylvania, the bonds of the borough, or in any other securities authorized by law for the investment of sinking funds of municipalities, when in its judgment the interests of the borough will be enhanced thereby, . . ."

According to the testimony the balance in sinking fund no. 3 (issue of 1924) on January 1st was $22,-924.99, and taxes paid into it amounted to $2,154.01, making a total of $25,079.33. From this amount, $1,250

was paid, leaving a balance of $23,829.33 at the end of 1947. The interest paid on this account amounted to $225.33.

In sinking fund no. 4 (issue of 1925) there was a balance on January 1, 1947, of $60,156.92, and taxes paid into the fund amounted to $3,230.90, making a total of $63,387.82. There was paid out of this fund $3,000, leaving a balance of $60,387.82.

On sinking fund no. 3, one percent interest was paid by the bank. On sinking fund no. 4, one percent was paid on that part of the fund which was in a savings account. On that part of the fund in a checking account no interest whatsoever was received.

Appellants contend the borough should have invested the sinking fund balances in United States G bonds.

Mr. Tosh, former secretary, testified that short term Treasury certificates yielded only $7/8$ percent and therefore, there was no point in buying these securities at a premium because bonds of these funds were due within a short time—the issue of 1924 was due December 1, 1948, and the issue of 1925 was due September 1, 1950. Because the intervening periods were so short, we will not question the decision of council not to invest in other securities. However, it is inexcusable to carry about $30,000 of sinking fund no. 4 in a checking account. By so doing an actual loss to the borough resulted.

On the basis of the smallest balance throughout the year, to wit, $60,156.92, the interest received should have been $601.56. The borough actually was paid $379.35, and therefore, there was a loss to the borough of $222.21. We must and do surcharge the councilmen in the amount of the loss.

4. *Form of auditors' report.*—In their specifications appellants complain that the auditors failed to set forth the maturity dates of the several bond issues. At argument this was not pressed since there was no

provision for these dates in the printed form of audit supplied by the State.

From the facts and discussion, we reach the following

## Conclusions of Law

1. The expenditures of the three councilmen who attended the borough convention were proper.

2. The borough suffered a loss of $1,462.19 through expenditures for items not provided for in the budget.

3. The borough council violated the law in not repaying the temporary loans from the pledged assets, to wit, the taxes first received and the State funds when received.

4. The borough suffered a loss of $222.21 by the failure of the councilmen to collect interest on the entire balance in sinking fund no. 4.

Upon consideration of the foregoing findings of fact and conclusions of law, we enter the following

## Order

Now, March 16, 1950, the prothonotary is directed to enter judgment in favor of the Borough of West Hazleton and against Arthur Heckler, Frank Ksanznak, Ben Lodderhose, Leon Levitsky, Edward E. Berge and Edward Henry, in the sum of $1,684.40, unless exceptions are filed to this decision within 30 days after notice by the prothonotary to the parties or their attorneys.

### OPINION SUR REHEARING

PINOLA, J., April 30, 1951.—Exceptions were filed by members of the Borough Council of West Hazleton to a surcharge in the sum of $1,684.40, entered by Pinola, J., on March 16, 1950. This sum included $222.21, loss suffered by the borough through failure of the councilmen to collect interest on the entire balance in sinking fund no. 4, and $1,462.19, an apparent loss,

resulting from expenditures for items not provided for in the budget.

At argument exceptants asked for an opportunity to explain the expenditures which were without the purview of the budget, and which they contended were made for borough purposes. They offered to show that no loss resulted to the borough through these expenditures.

At the hearing of the appeal the councilmen had failed to explain these expenditures. They merely introduced in evidence a group of totals.

In his decision, the trial judge declared:

"We are in no position to ascertain definitely what was done with the $1,462.19. The burden was upon the councilmen to establish the legality of these expenditures or to bring themselves within the provisions of the two statutes quoted above. They have done neither. There is nothing left for us to do but to surcharge them. . . ."

In fairness, the case was reopened, and after due notice to all parties concerned, a hearing was held on March 14, 1951. Exceptants produced a schedule showing the amount originally budgeted for each item, the amount expended, and in each case whether the amount expended exceeded or was less than the budget, and the amount of such difference.

The police salaries paid during the year 1947 exceeded the budget by $358.48. This excess was paid to a GI trainee who was hired about the middle of the year under a government program, wherein part of the salary was paid by the government and part by the borough.

The workmen's compensation premiums are only estimated. At the end of the year an audit of the payrolls determines the actual premium to be due for that year. The amount budgeted for insurance, namely,

$450, was not sufficient. The cost of workmen's compensation insurance exceeded the budget by $207.08.

There were insufficient funds in sinking fund no. 6 on September 12, 1947, with which to pay the interest due, and so $793.27 had been transferred to that fund for the payment of interest.

The actual necessary fuel, light and water bills for the town hall exceeded the budget by $107.32. These several items total $1,466.15 and explain expenditures exceeding $1,462.19.

On April 23, 1951, $222.21 was deposited to the credit of the borough for interest on the balance in sinking fund no. 4.

We are informed that in February 1948, $19,000 of the $22,000 then in sinking fund no. 4 was transferred from the check account to the savings account, so there was no further loss of interest.

On the basis of all the evidence, we approve findings of fact 1 to 17, inclusive, and we make the following additional

### Findings

18. Interest in the sum of $222.21 was paid to the borough on April 23, 1951, on account of sinking fund no. 4.

19. The sum of $1,462.19, expended for obligations incurred in excess of those provided for in the budget for the year 1947, was expended for legitimate purposes of the borough and no loss resulted to the borough from such expenditures.

We approve conclusions of law 1 and 3, and for conclusion of law no. 2, we substitute the following:

2. The borough suffered no loss through the expenditure of $1,462.19 for items not provided for in the budget.

For conclusion of law no. 4, we substitute the following:

4. The borough suffered no loss through the failure of the councilmen to collect interest on the entire balance in sinking fund no. 4.

Therefore, we enter the following

*Order*

Now, April 30, 1951, the appeal of the taxpayers of the Borough of West Hazleton is dismissed, the costs, however, to be paid by the borough councilmen.