Claude GARRETT and John C. Garrett, Jr.,
d/b/a Cole and Garrett Funeral Di-
rectors, Plaintiffs-Appellees,

v.

FOREST LAWN MEMORIAL GARDENS,
INC., Defendant-Appellant.

Supreme Court of Tennessee.

Feb. 19, 1974.

Hooker, Keeble, Dodson & Harris, Nashville, for plaintiffs-appellees.

David M. Pack, Atty. Gen., William B. Hubbard, Asst. Atty. Gen., Nashville, for Commissioner of Insurance and Banking.

Snodgrass & Holt, Nashville, for defendant-appellant.

## OPINION

W. M. LEECH, Special Justice.

We have granted certiorari in this case because we think that Sections 56–1101, 56–3201, 56–3205, and 56–3208, T.C.A. should at this time be construed in pari materia and the several cases which have heretofore been before this Court distinguished so as to clarify the distinction which the statutes and cases make between a funeral director or home, on one hand, and associations and similar companies on the other.

The Court of Appeals, Middle Section, in an opinion by Presiding Judge Thomas A. Shriver, concisely stated the case and issues involved as follow:

"Plaintiffs, Claude and John C. Garrett, Jr., d/b/a Cole and Garrett Funeral Directors, brought this action pursuant to T.C.A., Sections 56–3206, et seq., to enjoin the defendant, Forest Lawn Memorial Gardens, Inc., from soliciting and entering into contractual arrangements providing for the sale of burial spaces, funeral merchandise and membership in the Forest Lawn Memorial Membership Association. After the filing of said bill, the Commissioner of Insurance and Banking of Tennessee was permitted to intervene on behalf of the plaintiffs and, subsequent to this, Thomas J. and Ruth Lowery were permitted to file their intervening petition seeking a return of installment payments made pursuant to a contract with the defendant. Said intervening petition sought leave to proceed with said cause as a class action on behalf of similar contract holders with defendant. The Court declined to sustain the intervening petition of the Lowerys as a class action, but sustained same as an individual action on their behalf.

"The case was tried before Chancellor Ned Lentz on June 7, 1972 on oral documentary evidence, and resulted in a decree sustaining plaintiffs' prayers for an injunction and a judgment on behalf of the plaintiffs Lowery for the money they had paid the defendant under their contract."

. . . . . .

"The original bill avers, and the record shows that the defendant is a corporation organized under the laws of Tennessee and is engaged in the cemetery business, but, as an adjunct thereto, it operates a division known as Forest Lawn Memorial Membership Association, which said division is engaged in the business of entering into contracts with various individuals for the sale of memorial stones or placques, burial vaults and funeral services, and that said Membership Association attempts to and does procure contracts with various residents of Tennessee providing for funeral merchandise and funeral expenses on a pre-need basis. A copy of such contract used by the defendant is attached to and made 'Exhibit A' to the bill.

"It is alleged that said contract is in violation of T.C.A. Sections 56–3205 through 56–3211.

"The record shows that plaintiff, through Forest Lawn Memorial Membership Association, which is designated as

a division of plaintiff corporation, offers membership to customers who, as members, may purchase burial spaces, funeral merchandise and bronze markers for use in Forest Lawn Memorial Gardens, which is a cemetery owned by the defendant. A membership fee of $100.00 for each person is required as an initial payment, and, as an incident to such membership, a customer is given the right to purchase a funeral service at the time of need at a fixed price of $455.00, which price is available only to members of the Association. The merchandise and service offered as a part of the contract are especially designed for members in said Association. It is also shown that, as a result of such outstanding contracts and the membership program of the defendant, fifty percent of the funeral services conducted at Forest Lawn Memorial Gardens are membership services. The right to purchase a funeral for $455.00 is available at defendant's funeral home, but also may be purchased through Woodlawn Mortuary which has joined in such program."

. . . . . .

## "OUR CONCLUSIONS

"T.C.A. Section 56–1101 defines a contract of insurance as:

' . . . an agreement by which one party, for a consideration, promises to pay money or its equivalent, or to do some act of value to the assured, upon the destruction or injury, loss or damage to something in which the other party has an insurable interest . . .'

"It is shown by the record that one may contract with the defendant for a funeral at a fixed price of $455.00 by paying a membership fee of $100.00.

"It seems clear that such a contract involves a consideration for a service to be performed at a set fee contingent upon one's death, and that under the foregoing statutory definition, this is an insurance contract.

"It appears that the principal reason for the payment of $100.00 for a membership, or $200.00 in case of a man and wife, is that the member is, thereby, promised a funeral at a fixed price of $455.00, but, according to the record, in order to use these services, one must accept same from the defendant or one of its cooperating mortuaries, and, at present, this gives a choice of two funeral directors, to-wit, Mr. W. H. Ligon, or his father, Mr. Raymond Ligon, and if you should choose any other funeral home or funeral director, you lose the value of your membership fee.

"T.C.A. Section 56–3205 provides, in part, that it shall be unlawful for a company issuing any contract or certificate 'upon the lives of citizens of this state, to designate in said policy contract, or certificate, or otherwise, the person, firm or corporation to conduct the funeral of the insured.'

"The Chancellor was of the opinion that the contract violated the foregoing statutory provisions and we concur in the Chancellor's opinion in this regard, especially where said Section of the Code (56–3205) prohibits a contract which tends to limit or restrict the freedom of choice in the open market regarding contract purchases and arrangements with reference to any part of a funeral service for such insured.

"Again, Section 56–3207 T.C.A., makes it unlawful for a company to enter into a contract with a funeral director, or undertaker, providing that such funeral director or undertaker shall conduct the funeral of persons insured by such insurance company, fraternal benefit society, or similar company.

"The contract in question provides for the furnishing of a casket, a vault, burial clothes, and burial services, which, it is insisted by appellees, violates T.C.A. Section 56–3208 wherein 'Contracting and agreeing to furnish merchandise or services upon the death of a person in-

sured,' is prohibited. Said Section also forbids the making of a contract under which there is promised any rebate, discount, or reduction in price for or on account of funeral merchandise, expenses, or services by virtue of being issued such a policy or certificate."

We agree with the Chancellor and the Court of Appeals that the contracts involved are contracts of insurance, and we now come to an examination of the statutes.

Section 56–3201 T.C.A. provides as follows:

"It shall be unlawful for any *person, partnership, corporation, company or any organization of any nature whatsoever,* to execute or issue a contract on the life of any person residing in this state which provides that the death benefit, upon the insured's death, shall be settled by furnishing the deceased insured with burial or some part of such service, at a price named in said contract exceeding one hundred dollars ($100.00), unless it is also stipulated therein that said death benefit may be paid in cash in a like amount as the maximum price named or expressed for the burial service or benefit in settlement of such contract, at the option of the representative of 'the deceased insured . . . " (emphasis added.)

It is clear that this section is applicable to a licensed funeral director or home, as well as an association as in the instant case. It is important to note, however, that the statute does not preclude an individual funeral home or director from contracting to arrange the burial of any customer on a pre-need basis if it is stipulated in the contract that the representative of the deceased insured may opt for cash payment in the amount of the maximum price named in settlement of the contract.

T.C.A. § 56–3208 provides:

"It shall be unlawful for any *life insurance company, fraternal benefit society, or similar company, or association,* en-gaged in writing any type of life insurance by whatever name called, upon the lives of citizens of this state, to enter into any contract with any citizen of this state, contracting and agreeing to furnish funeral merchandise or services upon the death of any person insured.

"It shall further be unlawful for any *person, firm or corporation* to issue any policy or certificate, or to enter into any contract, conditioned to take effect on the death of any person, wherein such person, or the personal representative, heirs, or next of kin of such person, is promised any rebate, discount or reduction in price for or on account of funeral merchandise, expenses or services by virtue of his being issued such policy or certificate, or being designated as beneficiary therein, or by virtue of his entering into such contract or being designated therein as the recipient of any such rebate, discount or reduction in price. (emphasis added).".

A close reading of this statute reveals that the first paragraph is not applicable to a funeral home or director contracting with individual customers on a pre-need basis. It is, however, applicable to an association separate from a funeral home as is involved in the case *sub judice.* A proper construction of this part of the statute allows a funeral director or home to contract with individuals for burial merchandise on a pre-need basis subject to the limitations of the second paragraph. It prohibits, however, associations, as the one in the instant case, from doing that very thing which individual funeral homes and directors are allowed to do, if in the form of a life insurance contract.

The latter part of the statute is, however, applicable to individual funeral homes and directors. It precludes them from issuing pre-need discount certificates for the reasons expressed in Long v. Mynatt, 207 Tenn. 319, 339 S.W.2d 26. Defendant contends that language in *Mynatt* to the effect that a discount must be in-

volved before such contracts are insurance contracts takes its association out of the operation of the statute as its contracts involve a fixed price. That reasoning is incorrect because the first paragraph of the statute precludes an association from dealing in funeral merchandise in the form of life insurance contracts whether or not a discount is involved. Properly construed, then, a funeral director or home can deal in funeral merchandise on a pre-need basis if a discount is not involved in an issued contract or certificate.

 Defendants are also in violation of T.C.A. § 56–3205 which provides as follows:

"It shall be unlawful for any life insurance company, fraternal benefit society, or other similar company, association, or society issuing insurance policies, contracts, or certificates upon the lives of citizens of this state, to designate in said policy contract, or certificate, or otherwise, the person, firm or corporation to conduct the funeral of the insured, or to organize, promote or operate any enterprise or plan, or to enter into any contract with such insured or with any other person, which plan or contract tends to limit or restrict the freedom of choice in the open market of the person or persons having the legal right of such choice regarding contracts, purchases and arrangements with reference to any part of a funeral service for such insured."

That statute, again, is applicable to associations and similar companies but not individual funeral directors or homes who may contract within the other statutory limitations on a pre-need basis.

Beginning with State ex rel. v. Mutual Mortuary Association (1933), 166 Tenn. 260, 61 S.W.2d 664, this Court held that certificates of an association inseparably linked with a funeral home guaranteeing a funeral was an insurance contract and quoted from State ex rel. Fishback v. Globe Casket & Undertaking Co., 82 Wash. 124, 143 P. 878, L.R.A.1915B, 976, as follows:

"The contract evidenced by the certificate has all of the elements of a life insurance contract. It is an agreement to perform a service which can become obligatory only on the death of the certificate holder."

The *Mutual* case was followed in 1940 by State ex rel. v. Smith Funeral Service, 177 Tenn. 41, 145 S.W.2d 1021, wherein a slightly different plan was employed, and this Court said:

"We are of the opinion that in their practical operation the certificates issued by the defendant will impose no liability upon the defendant until the death of the certificate holders."

In 1955 the Legislature enacted Chapter 195, Public Acts, captioned; "An Act to regulate burial insurance and to provide penalties for violation thereof." This Act has been codified in the sections of Tennessee Code Annotated heretofore discussed.

Following the enactment of Chapter 195, Public Acts of 1955, the Cosmopolitan Life Insurance Company filed suit in the Chancery Court for Davidson County attacking the constitutionality of the Act. In Cosmopolitan Life Insurance Company v. Northington, 201 Tenn. 541, 300 S.W.2d 911 (1956), the Act was declared constitutional.

This case was followed in 1960 by the case of Long v. Mynatt, supra, wherein this Court said:

"For all intents and purposes, under the decision in the Smith case, it makes no real difference whether installment payments are made in the contract or whether there is a named beneficiary or whether an obligation rests on the contract holder to avail himself or his rights under the contract or be bound by it.

"The contract is that in the present case the defendant, Mynatt, entered into an

agreement for a consideration, to furnish merchandise at a discount, *and also to furnish services in contemplation of death."* (Emphasis added)

 This Court, in the cases above considered, has looked behind the technical aspects of the contracts involved to the realities of the business. We have therefore construed the statutes applicable in pari materia, for the purpose of clarifying what a funeral home or director may or may not do, and what a burial association may or may not do. A review of the cases cited herein makes it clear that any plan or design employed for the purpose of controlling the funeral business by insurance contracts, will be stricken down by the courts.

For the reasons herein stated the judgment of the Court of Appeals is affirmed.

DYER, CHATTIN, McCANLESS and FONES, JJ., concurring.